# QUEJA CONTRA LOS LICS. JOSÉ E. CARRERAS ROVIRA y LUIS AMAURY SUÁREZ ZAYAS.

*Números:* A-84-7,  A-84-6  *Resueltos:* 7 de noviembre de 1984

780

*Bernice Colón Gutiérrez, pro se; Ilia Franceschi González, pro se; Luis Amaury Suárez Zayas y José E. Carreras Rovira, pro se.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Evaluamos dos quejas sobre conducta profesional.

I

La primera es promovida por la Sra. Ilia Franceschi González contra el Lic. José E. Carreras Rovira. En síntesis, bajo juramento expuso que trabaja con la Corporación de Servicios Legales de Puerto Rico y pertenece a la Unión Independiente de Trabajadores de Servicios Legales de Puerto Rico. Como sanciones disciplinarias la Unión le impuso unas multas, le prohibió participar en sus organismos directivos y le exigió la devolución de los sueldos recibidos durante los días que cruzó la línea de piquetes y paro.(¹) Ella se negó. La Unión entonces la demandó en cobro de dinero a través del licenciado Carreras Rovira, quien alegadamente la había representado con anterioridad en una acción para poner en vigor un laudo de arbitraje en la jurisdicción federal, fungiendo a su vez como el representante legal de la Unión en las negociaciones del convenio colectivo. A juicio suyo, el licenciado Carreras Rovira actuó impropiamente al representar a la Unión y a ella como miembro en las negociaciones colectivas, haberla representado en otros pleitos, y no obstante, tramitar una acción en su contra en cobro de dinero.

Carreras Rovira contestó. Admitió que representó a la Unión en el foro federal en un caso sobre interpretación de convenio de cuyo resultado se benefició, entre otros, la quejosa. Negó que se reuniera o hubiera recibido de ella comunicación en el ámbito de una relación de abogado y cliente. Expuso que la acción en cobro de dinero fue en representación de la Unión, y que la misma no tenía ninguna pertinencia con negociaciones sobre convenios colectivos o con el caso para poner en vigor el laudo de arbitraje en el foro federal.

La quejosa Franceschi González replicó. Aceptó que en ningún momento medió comunicación entre ellos y consignó

_____

(¹) No está ante nos la legalidad de las actividades gremiales según el convenio o de las sanciones impuestas.

que como abogado de la Unión él también representa a cada uno de los unionados.

La segunda queja la originó la Sra. Bernice Colón Gutiérrez contra los licenciados Carreras Rovira y Luis Amaury Suárez Zayas. Mediante declaración jurada alegó que fue empleada de la Corporación y perteneció a la Unión hasta agosto de 1983. La Unión le impuso una multa y le exigió la devolución del salario devengado en los días que trabajó estando vigente un paro sindical. Para cobrar el dinero la Unión la demandó por conducto del licenciado Carreras Rovira. Éste había representado antes a la Unión y sus miembros en negociaciones para el convenio colectivo. Adujo también que el día de la vista compareció en representación de la Unión su Presidente, el licenciado Suárez Zayas y le hizo una oferta de transacción. Sostiene que ello constituye conducta impropia.

Carreras Rovira contestó según antes expresado. En cuanto a la quejosa Colón Gutiérrez dejó claro que no se benefició de la decisión del foro federal.

Por su parte, el licenciado Amaury Suárez Zayas negó haberla asesorado o haber establecido relación de abogado y cliente como abogado de la Corporación. También negó haberlo hecho como Presidente de la Unión. Alegó que se ha desempeñado estrictamente como su representante sindical.

La quejosa Colón González cuestionó que el licenciado Carreras Rovira, abogado de la Unión y asesor de sus miembros, pueda llevar acciones civiles contra los unionados. En cuanto a la contestación del licenciado Suárez Zayas, adujo que éste no ha podido deslindar sus funciones como Presidente de la Unión de las de abogado. Acompañó una carta que aquél enviara como abogado de la Corporación a su Director para la cual utilizó papel timbrado de la Unión y firmó como su Presidente.

## II

Las fronteras y aplicación tajante de algunos cánones

de ética a veces resultan complicadas. La ausencia de precedentes en unión a hechos de su faz inocentes, dificultan en ocasiones la expresión nítida de la pauta a regir. Sin embargo, ello no es óbice para cumplir con nuestra función constitucional de orientar en este campo a la profesión togada. *In re Díaz Alonso, Jr.*, 115 D.P.R. 755 (1984). Nuestros pronunciamientos no tienen que producirse siempre ante conducta antiética. La conducta lícita sirve también de vehículo para aclarar, explicar y comprender el alcance o significado de un criterio que resulta dudoso para quien se considera agraviado. En todo caso, hemos de insistir en la importancia de la apariencia como elemento importante a ser ponderado y evaluado para despejar incertidumbres de licitud y propiedad. Con este prisma presente hemos de adentrarnos en la compleja área ética del conflicto dimanante de intereses encontrados. Se imponen unas reflexiones mínimas sobre el ejercicio de la práctica de la profesión de abogado.

▋ El desempeño de la abogacía requiere en todo momento celo, cuidado y prudencia. La consecución de estos logros no admiten duda ni ambigüedad en la gestión profesional. *In re Rodríguez Torres*, 104 D.P.R. 758, 765 (1976). La vigencia de las normas de ética no depende de quienes en situación de conflicto tienen la fortaleza para resistir la humana tentación de adelantar impropiamente sus intereses personales frente a los débiles de voluntad susceptibles de sucumbir, ni distingue ni discrimina entre éstos y los que no la tienen. *In re Cancio Sifre*, 106 D.P.R. 386, 395 (1977). El criterio objetivo ético tiene que prevalecer sobre el subjetivo sea o no *bona fide*. Así, no puede un abogado aducir como justificación para salvar el conflicto de intereses, que no habrá de utilizar las confidencias o secretos de un cliente en perjuicio de éste. *In re Concepción Suárez*, 111 D.P.R. 486, 491 (1981). Es menester asegurarse que la conducta no ha sido influenciada por intereses encontrados. *In re Rojas Lugo*, 114 D.P.R. 687 (1983).

▋ Ese reclamo tiene su génesis en la fidelidad, leal-

tad y diligencia a que es acreedor el cliente. *Colón Prieto* v. *Géigel*, 115 D.P.R. 232 (1984). No le está permitido apartarse de los mismos. Actuar con destreza y cuidado; informarle sobre sus honorarios; proteger sus intereses; cumplir con las instrucciones por medios permisibles; consultarlo sobre dudas que no caigan en el ámbito discrecional; y mantenerlo informado sobre todo lo necesario, son deberes elementales cuya justificación no necesita mucha elucidación.

Las dudas sobre cuestiones de ética profesional debe resolverlas el abogado con rigurosidad contra sí mismo. *In re Valentín González*, 115 D.P.R. 68 (1984). La lealtad del abogado para con su cliente en relación con los asuntos que éste le haya consultado o si le ha encargado su representación, es indivisible y continúa aun después de cesar entre ellos las relaciones de abogado y cliente. *In re Guzmán*, 80 D.P.R. 713, 723 (1958). Puede haber situaciones que escapen a la reglamentación y en las que para evitar aun la apariencia de conducta impropia, el buen juicio aconseje la abstención. *B. & L., Inc.* v. *P.R. Cast. Steel Corp.*, 114 D.P.R. 808 (1983). [2]

En el contexto específico de un abogado contratado por una Unión para representarle en negociaciones de convenios colectivos, asesorar a sus unionados en las asambleas y demás actividades concertadas, y en acciones judiciales, se plantean las siguientes interrogantes: ¿Puede éste representarla en los tribunales contra los miembros de esa Unión? ¿Existe algún conflicto de intereses? ¿Cuál es el grado de conflicto de intereses requerido para descalificarle en esa acción civil y exponerle a sanción disciplinaria? Además, ¿qué medidas debe tomar el Presidente de una Unión, que es abogado, para evitar conflictos de intereses entre su actividad sindical y la profesional?

---

[2] Se ha resuelto que en una situación que plantee la posibilidad de descalificación de un abogado por conflicto de intereses, cualquier duda debe ser adjudicada en favor de la descalificación. *In re Coordinated Pretrial Proceedings, etc.*, 502 F. Supp. 1092, 1099 (1980).

El Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, reza:

El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

*Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.*

Cuando un abogado representa un cliente por encomienda de otra persona o grupo, quien le paga al abogado por dicho servicio, debe renunciar la representación de ambos tan pronto surja una situación de conflicto de intereses entre la persona o grupo que le paga sus honorarios y la persona a quien representa.—Diciembre 24, 1970, ef. Diciembre 24, 1970. (Énfasis suplido.)

Este texto y la trayectoria doctrinaria en los últimos años sirve como punto de partida para adentrarnos en el concepto de conflicto de intereses por representación múlti-

ple y la representación sucesiva de clientes, cuando el abogado representa a la entidad y a sus miembros.

█ Interpretada su extensión, cubre situaciones de *estrecha relación* "tanto profesional como de amistad". *In re Concepción Suárez*, supra, pág. 490. Y bastó en ese caso la posibilidad de intereses encontrados para requerirle al abogado que renunciara la representación de su cliente —la esposa de un antiguo amigo y cliente suyo— en una acción de divorcio.(3)

█ Otras decisiones, han versado sobre la posibilidad o la existencia de conflicto de intereses entre abogado y cliente —*In re Martínez Rivera*, 106 D.P.R. 239 (1977)— aun cuando se trate de partes contrarias en casos separados y no relacionados respecto a sus causas de acción. *In re Rodríguez Torres*, supra; *In re Guzmán*, supra, pág. 724. Recientemente resolvimos que existía un insalvable conflicto de intereses entre el ejercicio de la profesión de abogado ante el Fondo del Seguro del Estado y la Comisión Industrial y el ocupar el cargo de Presidente de la Unión del Fondo. Enfatizamos que el cargo de Presidente "puede dar la apariencia de que está en posición de influenciar a los unionados en los casos en que interviene como abogado. *Son evidentes los intereses encontrados o, por lo menos*, la apariencia de ello". *In re Rojas Lugo*, supra. En igual tónica hemos repudiado en la acción civil la figura confusa de abogado y notario en el mismo caso como germen con potencialidad de serio conflicto ético. *B. & L., Inc.* v. *P.R. Cast. Steel Corp.*, supra; *Pagán* v. *Rivera Burgos*, 113 D.P.R. 750 (1983).

█ Sin embargo, no hemos extendido innecesariamente su cubierta. Así, el dictar unas conferencias a una

---

(3) No debe extenderse ilimitadamente el *ratio decidendi* de este caso. Contempla situaciones de representación legal de partes conocidas, cuando median circunstancias especiales de conocimiento de negocios o información utilizable por una parte contra la otra. Véase L. Alfonso de Cumpiano, *Visión general sobre la ética judicial y profesional en Puerto Rico*, 86 Rev. Der. Puertorriqueño 305, 316 (1982).

parte adversa a los intereses de un cliente anterior no constituye conflicto de intereses. *In re Añeses Peña*, 113 D.P.R. 756 (1983).

## III

Por su naturaleza, al hablar de intereses encontrados, penetramos la dimensión de las incompatibilidades. Incompatibilidad es término equivalente a antagonismo, oposición, repugnancia que tiene una cosa para unirse con otra, o dos o más personas entre sí. También se refiere a la imposibilidad legal de simultanear dos o más cargos, funciones o misiones una misma persona. El primer significado alude al orden físico, el segundo toca el aspecto moral y el último afecta el orden legal. En materia deontológica se acepta que uno de los requisitos para el ejercicio de la abogacía es la compatibilidad de la actuación con la situación y circunstancias. La premisa es sencilla: quien no sea independiente no está en condiciones de ejercer la profesión. A. Fernández Serrano, *De las incompatibilidades para ejercer la abogacía*, Madrid, Artes Gráficas M.A.G., S.L., 1952, págs. 5-7. Frente a cualquier lucha del mundo jurídico aparecen, además de una cosa, —sea un bien, un derecho o un interés— dos o más individuos como "señores del conflicto". El abogado actúa siempre a la vista de tal proceso o dentro del proceso mismo. A. A. Mercader, *Abogados*, Buenos Aires, Eds. Jurídicas Europa-América, 1960, pág. 75. La función de abogado tiene, pues, un carácter eminentemente público en cuanto constituye un órgano intermedio entre el juez y los litigantes. A. Fernández Serrano, *La abogacía en España y en el mundo*, Madrid, L.I.D., 1955, T. 1, pág. 65; *Ramírez de Arellano* v. *Srio. de Hacienda*, 85 D.P.R. 823, 830 (1962). El abogado es el primer enjuiciador de un pleito sobre el cual el juez pronunciará el último dictamen. Mercader, *op. cit.*, pág. 105.

La prohibición contra la representación simultánea de clientes con intereses en conflicto tradicionalmente ha

formado parte integral de los códigos de ética. De este modo se busca preservar la autonomía de juicio del abogado y prevenir cualquier tipo de dilución a la fidelidad que debe a su cliente. *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv. L. Rev. 1244, 1292-1293 (1981). [4]

■ En el contexto del deber de lealtad, puede decirse que los intereses de dos clientes difieren si son conflictivos, inconsistentes o diversos. *ABA Model Code of Professional Responsibility,* EC 5-14, en T. Morgan y R. Rotunda, *Problems and Materials of Professional Responsibility,* 2da ed., Mineola, N.Y., Foundation Press, 1983 Supp., pág. 30.

■ Sin embargo, se reconoce la dificultad que entraña, en términos de cuán claro debe ser el conflicto de intereses que tiñe de indebida la representación legal. Al parecer será utilizada la perspectiva del "abogado razonable". [5] El abogado debe decidir objetivamente cuál debe ser el curso legal óptimo para cada cliente. Sólo después de concluir este análisis puede determinar si los intereses de los clientes son incompatibles y la representación por tanto inapropiada. Se ha empleado también el criterio de que resulta "obvio" que la representación legal es impropia. [6] También ha sido aplicado como enfoque la evolución de si tales intereses pueden confligir actual o potencialmente y si conllevan litigación. *Development in the Law, op. cit.,* págs. 1306-1307.

---

[4] La Ordenanza de Londres de 1280 contiene una de las previas prohibiciones contra la representación simultánea de intereses conflictivos. Establecía: "No countor is to undertake a suit (*plai*) to be partner in such suit, or to take pay (*lower*) from both parties in any action but well and lawfully he shall exercise his profession." 94 Harv. L. Rev. 1292 n. 43 (1981).

[5] Para propósitos de responsabilidad civil hemos adoptado el criterio del "abogado razonable". *Colón Prieto* v. *Géigel,* 115 D.P.R. 232 (1984). La apariencia de *impropiedad* también ha sido enfocada como una que puede ser reconocida por personas razonables. *In re Coordinated Pretrial Proceedings,* 658 F.2d 1355, 1361 (1981).

[6] Tal criterio fue utilizado en *In re Rojas Lugo,* 114 D.P.R. 687 (1983). Véase *The Judicial Response to Lawyer Misconduct,* American Bar Association Standing Committee on Professional Discipline Center for Professional Responsibility, VII. 4-5 (1984).

Entre los factores adicionales sugeridos a ser balanceados para valorar si el criterio del abogado ha sido afectado por el hecho de la representación múltiple, se destacan los siguientes: el grado en el cual los intereses de los clientes difieren; la naturaleza de la representación legal; la probabilidad de que el abogado sea influenciado por uno de los clientes; y la extensión en que los intereses de los clientes puedan ser afectados o perjudicados si el criterio del abogado fuese influenciado. S. Ragle Weddington, *A Fresh Approach to Preserving Independent Judgment—Canon 6 of the Proposed Code of Professional Responsibility*, 11 Ariz. L. Rev. 31, 35–36 (1969); *The Judicial Response to Lawyer Misconduct*, American Bar Association Standing Committee on Professional Discipline Center for Professional Responsibility, VII. 7 (1984).

▮▮▮ La representación sucesiva de clientes con intereses adversos presenta el peligro especial de que el abogado viole el principio de la confidencialidad. La reserva del secreto es uno de los principios más sagrados del abogado, quien viene obligado a cumplirlo, no sólo por mandato de ley, sino por dictados ineludibles de la conciencia. Fernández Serrano, *De las Incompatibilidades, op. cit.*, pág. 292. (⁷) De ahí nuestra decisión en *In re Guzmán*, supra, pág. 724, advirtiendo que tal privilegio subsiste aun concluida la relación profesional.

---

(⁷) *Las Siete Partidas* dispusieron a tal efecto:

"'Guisada cosa es, e derecha, que los abogados a quien dicen los omes las poridades de sus pleytos, que las guarden e que no las descubran a la otra parte. . . . E cualquiera que esto fiziere, desque le fuere prouado, mandamos, que dende en adelante, sea dado por ome de mala fama, e que nunca pueda ser abogado, ni consejero en ningún pleyto'.

"'E demás desto, que el Judgador del logar le pueda poner pena porende, según entendiere que la merece . . .'." A. Fernández Serrano, *De las incompatibilidades para ejercer la abogacía*, Madrid, Artes Gráficas M.A.G., S.L., 1952, pág. 294.

*La Novísima Recopilación* reiteró:

"'Mandamos que si algunos abogados descubrieren los secretos de su parte a la contraria o a otro en su favor . . . que además de las penas sobre esto en Derecho establecidas, por ese mismo hecho, sean privados y desde agora los privamos del dicho oficio de Abogacía . . .'." Íd., pág. 311.

Al reseñar el tratamiento que ha recibido el concepto de "cualquier interés del cliente con relación al que se le hayan hecho confidencias", expresamos:

(1) Cuando el abogado actúa en contra del interés del cliente anterior en el mismo asunto o en la misma causa de acción. En tales casos las cortes han descalificado al abogado para continuar representando al nuevo cliente independientemente de que haya o no recibido información confidencial del anterior cliente; y (2) cuando el abogado actúa en contra de los intereses del anterior cliente en un asunto o causa de acción diferente y en el cual información confidencial revelada por el primer cliente puede no ser de importancia. Bajo esta categoría es que han surgido las mayores dificultades. Algunas cortes han exigido al primer cliente que revele la información confidencial que habrá de ser usada en su contra, antes de proceder a excluir al abogado del caso. Otras cortes han adoptado un punto de vista contrario fundándose precisamente en que obligar al cliente [a] revelar la información confidencial equivaldría a descubrir aquello cuya secretividad la regla trata de proteger.

Para enfrentar el problema de la representación sucesiva se ha elaborado el criterio de "relación sustancial". Bajo esta fórmula el cliente sólo tiene que demostrar que la controversia legal envuelta en el pleito en la que el abogado comparece en su contra, estaba relacionada sustancialmente con la materia o causa de acción en la que tal abogado previamente le representó.[8] El cliente no tiene que probar una violación actual al principio de confidencialidad. Sólo se requiere una relación previa de abogado y cliente, y que tal representación resulte adversa y esté sustancialmente rela-

---

[8] *T.C. Theatre Corp.* v. *Warner Bros. Pictures*, 113 F. Supp. 265 (S.D.N.Y.) (1953). Para un ulterior desarrollo de la doctrina véanse: *Development in the Law— Conflicts of Interest in the Legal Profession*, 94 Harv. L. Rev. 1244, 1317 n. 168 (1981); *The Judicial Response to the Lawyer Misconduct, op. cit.*, V. 4-10; N. J. Moore, *Conflict of Interest in the Simultaneous Representation of Multiple Clients: A Proposal Solution to Current Confusion and Controversy*, 61 Tex. L. Rev. 211, 230 y ss. (1982); V. H. Kramer, *The Appearance of Impropriety Under Canon 9: A Study of Federal Judicial Process Applied to Lawyers*, 65 Minn. L. Rev. 243, 255 y ss. (1980).

cionada con la anterior. *Development in the Law, op. cit.,* págs. 1317–1319, 1293 n. 47. No obstante, la conclusión de que un conflicto de intereses existe solamente si surge en el presente una discrepancia entre las posiciones asumidas por los clientes no es necesariamente inconsistente con el reconocimiento de la existencia de posibles discrepancias teóricas que puedan crear un conflicto de intereses potencial impermisible.[9] N. J. Moore, *Conflict of Interest in the Simultaneous Representation of Multiple Clients: A Proposed Solution to Current Confusion and Controversy,* 61 Tex. L. Rev. 211, 222 n. 46 (1982); Weddington, *op. cit.,* págs. 46–47. El principio de impropiedad ha sido invocado en casos de descalificación sin necesidad de que se aporte prueba de una violación ética. Moore, *op. cit.,* pág. 227 n. 85; V. H. Kramer, *The Appearance of Impropriety Under Canon 9: A Study of the Federal Judicial Process Applied to Lawyers,* 65 Minn. L. Rev. 243, 252–260 (1980). En esencia existe una presunción irrefutable de que información confidencial será utilizada por el abogado que representó anteriormente a un cliente y ahora asume una posición contraria a sus intereses. De todas formas, la apariencia de impropiedad será utilizada para resolver cualesquiera dudas que surjan sobre posible conflicto de intereses, en favor de la descalificación.[10] *The Judicial Response to Lawyer Misconduct, op. cit.,* VII. 5-6.

---

[9] El Código de Ética Profesional de la American Bar Association dispone al respecto:

"If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. . . . A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. . . . On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation." T. Morgan y R. Rotunda, *Problems and Materials of Professional Responsibility,* 2da ed., Mineola, N.Y., Foundation Press, 1983 Supp., págs. 30–31, EC 5-15.

[10] Véanse: *In re Valentín González,* 115 D.P.R. 68 (1984); *In re Coordinated Pretrial Proceedings, etc.,* ante.

En nuestra jurisdicción, la autonomía del cliente no se extiende al punto de permitirle que acepte mediante la manifestación de su consentimiento voluntario e informado, la representación legal cuando existe alguna posibilidad de conflicto de intereses. En la jurisdicción federal se ha planteado bajo circunstancias especiales.[11] *ABA Model Rules*, Regla 1.7, Morgan y Rotunda, *op. cit.*, pag. 91. Nuestro Canon 21 lo prohíbe expresamente. Finalmente, prevalece un criterio de aproximación judicial que conduce a una evaluación de los hechos particulares de cada caso y las circunstancias que lo rodean, balanceando el perjuicio que pueden sufrir el cliente y su abogado. *The Judicial Response to Lawyers Misconduct, op. cit.*, VII. 10.

## IV

Hemos notado que el Canon 21 no menciona las uniones gremiales. Sin embargo, su texto es orientador por la analogía que existe con las corporaciones y las sociedades como entidades de ciertos perfiles que las separan de las personas que las integran.

La obligación profesional de los abogados que representan organizaciones, particularmente corporaciones, ha sido explorada por muchos comentaristas últimamente. J. S. Slovack, *The Ethics of Corporate Lawyers: A Sociological Approach*, 1981 A.B.F. Research J. 753, 785–786 (1981).[12] Para

---

[11] En tal caso, el abogado debe realizar una determinación previa sobre cuáles son o deben ser los intereses de su cliente. Moore, *op cit.*, pág. 223 n. 51.

[12] Este autor nos reporta gran parte de dicho estudio. G. C. Hazard, *Ethics in the Practice of Law*, New Haven, Yale Univ. Press, 1978, págs. 43–57; R. Rotunda, *Law, Lawyers and Managers in the Ethics of Corporate Conduct* (Walton ed. 1977); B. Forrow, *The Corporate Law Department Lawyer: Counsel to the Entity*, 34 Bus. Law. 1797 (1979); H. Frank, *A Higher Duty: A New Look at the Ethics of the Corporate Lawyer*, 26 Clev. St. L. Rev. 337 (1977); Gross, *Attorneys and their Corporate Clients: SEC Rule 2(e) and Georgetown Whistle-Blowing Proposal*, 3 Corp. L. Rev. 197 (1980); S. Gruenbaum, *Corporate/Securities Lawyers: Disclosure, Responsibility, Liability to Investors and National Student Marketing Corp.*, 54 Notre Dame Law. 795 (1979); Kutak, *Whom Does Corporate Counsel Represent?*, 2 Corp. Director 1 (March/April 1981); M. Maupin, *Environmental Law, the Corporate Lawyer*

un estudio general véanse N. Redlich, *Professional Responsibility: A Problem Approach*, Boston, Little, Brown & Co., 1983, págs. 168-201; S. T. FitzGibbon, *Professional Ethics and the Lawyer Organizing a Corporation*, 25 Corp. Prac. Comm. 199 (1983-1984).

El problema de la responsabilidad profesional en esta área surge del hecho de que el abogado provee servicios a un principal y sus agentes. La cuestión central es determinar la manera en la cual el abogado debe actuar para satisfacer sus deberes de competencia, lealtad y comunicación con su cliente. Slovack, *op. cit.*, pág. 786. El punto de partida y clave radica en la identificación del cliente. G. C. Hazard, *Ethics in the Practice of Law*, New Haven, Yale Univ. Press, 1978, págs. 43-45; Slovack, *op. cit.* pág. 786.

En resumen, el abogado debe aproximarse a la situación y definir su relación con los clientes. Luego examinar si en la misma puede intervenir un solo abogado o cada parte debe estar representada por separado. Hazard, *op. cit.*, págs. 83-84.

A tono con lo expuesto, ¿cuál es el cliente de los abogados querellados? ¿La Unión? ¿Los unionados? ¿Son los últimos clientes indirectos e inseparables de la Unión como cliente principal? Nuestro Canon 21 y su concordable, la Regla 1.13 del Código Modelo de Responsabilidad Profesional de la American Bar Association,(13) parten de la premisa de que en ausencia de representación dual el abogado

and the Model Rules of Professional Conduct, 36 Bus. Law. 431 (1981); C. Pierce, The Code of Professional Responsibility in the Corporate World: An Abdication of Professional Self-Regulation, 6 U. Mich. J.L. Ref. 350 (1973); Symposium, Ethical Responsibilities of Corporate Lawyers, 33 Bus. Law. 1173 (1978); Van Dusen, The Responsibility of Lawyers Advising Management Under the ABA Code of Professional Responsibility, Pa. B. Ass'n. Q. 69 (Jan. 1975); H. Williams, Professionalism and the Corporate Bar, 36 Bus. Law. 159 (1980).

(13) "(a) A lawyer employed or retained by an Organization represents the Organization, including its Directors, Officers, Employees, Members, Shareholders or other constituents, as a group, except where the interests of any one or more of the group may be adverse to the organization's interest. . . ." Morgan y Rotunda, op. cit., págs. 107-109.

de una organización tiene una relación de abogado y cliente con la "entidad" y no con sus miembros. Tal teoría encuentra apoyo en el derecho corporativo que reconoce a la organización una personalidad jurídica separada en contraposición a sus miembros. Slovack, *op. cit.*, pág. 786; 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* Secs. 25-29 (1974); FitzGibbon, *op. cit.*, págs. 210-217; Morgan y Rotunda, *op. cit.*, págs. 333-353; M. L. Schwartz, *Lawyers and The Legal Profession*, Indianapolis, The Bobbs-Merril Co., Inc., Pubs., 1979, págs. 320-340; Redlich, *op. cit.*, págs. 168-201; 1 A.L.R.4th 1124, 1127 (1980).

Bajo este enfoque, se disipa cualquier duda en cuanto a la conducta de los abogados querellados. Ellos no representaron previamente a las quejosas en su calidad personal. No mediaron comunicaciones previas privilegiadas. Su cliente en todo momento fue la entidad gremial. No percibimos la existencia de un conflicto de intereses por el hecho de iniciar acciones civiles en contra de dichas unionadas. Resultaría muy oneroso y a su vez un contrasentido, requerir a la Unión que contrate abogados independientes para proceder contra sus miembros. Morgan y Rotunda, *op. cit.*, pág. 340.

Aclaramos, sin embargo, que en circunstancias apropiadas, que planteen una representación sucesiva real, o múltiple, serán aplicados los criterios reseñados. En tales circunstancias, debe el abogado tener presente que su ministerio radica en su conciencia libre, independiente y alerta, que le dicte las pautas a seguir para un comportamiento debido y correcto. Su mejor recurso será su probidad y prudencia y una evaluación de su situación a la luz de la totalidad de los hechos particulares.

*Se dictará sentencia para archivar las quejas.*

El Juez Asociado Señor Torres Rigual no intervino.