MELVIN W. ROBLES SANABRIA, *Ex parte*, peticionario.

Número: MC-90-21    Resuelto: 3 de mayo de 1990

*Melvin W. Robles Sanabria*, de *Servicios Legales de Puerto Rico, Inc.*, pro se.

## RESOLUCIÓN

Vista la moción en auxilio de jurisdicción al amparo de la Regla 50 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. I-A, se ordena la paralización de los procedimientos en el tribunal de instancia hasta que otra cosa disponga este Tribunal.

*Notifíquese por teléfono y por correo.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió voto disidente preliminar, al cual se une el Juez Asociado Señor Rebollo López.

(*Fdo.*) Francisco R. Agrait Lladó

*Secretario General*

—O—

Voto disidente preliminar del Juez Asociado Señor Negrón García, al cual se une el Juez Asociado Señor Rebollo López.

El Lcdo. Melvin W. Robles Sanabria se desempeña en la oficina de Utuado de la Corporación de Servicios Legales de Puerto Rico. Recientemente fue designado abogado de oficio del Sr. Ceferino Corraliza Rivera por el Tribunal Superior, Sala de Utuado (Hon. Roberto M. Miranda, Juez), en la causa instada contra éste por su ex esposa, la Sra. María A. Pérez, sobre alimentos recíprocos (Civil Núm. CS-89-1454).

*Pro se*, cuestiona la designación y aduce que este pleito es secuela del caso de divorcio por mutuo consentimiento que fue tramitado por la misma oficina de Utuado, lo que ahora plantea un conflicto ético.

I

Los hechos se remontan a 1985, cuando los entonces esposos Corraliza-Pérez acudieron a dicha entidad a gestionar la representación profesional para el trámite del divorcio por mutuo consentimiento.

En aquel momento, según el licenciado Robles Sanabria, "*actuaron tres miembros de la oficina*: el Lcdo. Miguel Negrón quien efectuó la entrevista inicial, el Lcdo. Pérez Juarbe quien preparó la Petición de divorcio [de 6 de diciembre de 1985] y el Lcdo. Antonio Plaza quien representó a los Peticionarios en la vista del caso. *Todos ellos tuvieron oportunidad de compartir esa información privilegiada*". (Énfasis suplido.) Nos expone que "no es la primera vez que diferentes miembros de la Oficina, representan algún cliente en particular. También a clientes de *diferentes Oficinas* cuando por razones de señalamientos simultáneos el abogado a cargo no puede atenderlo, es necesario que compañeros de *otras oficinas* los representen durante la vista del caso. *El funcionamiento de Servicios Legales es de un s[o]lo bufete*

*continuo por toda la Isla y la información de éste es compartida.*
Inclusive cuando en el 1987, fue cerrado el Centro de San
Sebastián de Servicios Legales, esta Oficina se hizo cargo de parte
de los casos de ese Centro. Inclusive las pruebas número 2 y 3, de
esta Petición han sido tomadas del expediente existente al que he
tenido acceso; por lo tanto aplica ese *criterio corporativo común*".
(Énfasis suplido.)

La sentencia de divorcio fue dictada el 28 de febrero de 1986,
mientras que la reclamación de alimentos recíprocos que motiva
este incidente se inició en 1989.

## II

El planteamiento del licenciado Robles Sanabria es serio y
honesto. Está predicado en la norma ética pautada en *In re
Orlando Roura,* 119 D.P.R. 1 (1987). Allí, al amparo del Canon 21
del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, resolvimos que
"existe una insalvable incompatibilidad en que un abogado, que ha
representado a ambas partes en un pleito de divorcio por consen-
timiento mutuo, intervenga y participe en esa condición en
cualquier litigio posterior relacionado, directa o indirectamente,
con las cuestiones objeto de dicho divorcio por consentimiento. Sin
que sea limitativa, esta prohibición comprende *asuntos de pen-
siones alimenticias,* bienes gananciales, patria potestad, custodia
de menores y otras consecuencias del divorcio". (Énfasis suplido.)
*In re Orlando Roura,* supra, págs. 6–7.

Advertimos, sin embargo, que esa normativa fue establecida
en una situación propia de la *práctica privada retribuida,* la cual
naturalmente se extiende a todos los miembros de una sociedad
profesional de abogados en igual actividad privada. La situación
de autos se proyecta con referencia a una institución corporativa
que presta servicios legales gratuitos a los pobres del país. Esta
distinción es fundamental y nos obliga a ampliar nuestros hori-
zontes decisorios previos. La peculiar dinámica profesional gene-
rada por este tipo de servicios requiere un enfoque diferente en el
campo deontológico. *Por esta razón, rehusamos aplicar una*

*norma ética en abstracto.* Optamos por identificar la naturaleza del conflicto ético y armonizarlo con la política pública de nuestro sistema de administración de justicia: aspirar a la más amplia, pronta y directa accesibilidad a servicios legales de calidad de los pobres.

No pasamos por alto el argumento de que la norma ética en juego persigue la protección del cliente. *In re Carreras Rovira y Suárez Zayas,* 115 D.P.R. 778 (1984); *In re Concepción Suárez,* 111 D.P.R. 486 (1981). No obstante, en este caso, con la aplicación rígida de la norma, esa protección no se configuraría. La cruda realidad es que las personas que carecen de recursos económicos están en una posición distinta a las personas pudientes. Están en desventaja porque no tienen libertad de acción para escoger otro abogado. Quien acude ante un bufete de abogados de la práctica privada y por razones éticas no logra contratarlo, aún tiene la alternativa de recurrir a otro. Ciertamente, la falta de paridad económica y la ausencia de alternativas constituyen desigualdad e injusticia para los menesterosos.

## III

En la tarea de conciliar los valores, *tomamos conocimiento judicial* de que la Corporación de Servicios Legales de Puerto Rico interviene anualmente en miles de casos de divorcio y otros incidentes relacionados, tal como las reclamaciones de alimentos. Se trata de un servicio *forense* profuso en todas las oficinas locales de la Corporación. *También tomamos conocimiento judicial* de que el peticionario, licenciado Robles Sanabria, juró como abogado ante este Foro el 14 de agosto de 1986, *esto es, después que la sentencia de divorcio adviniera final y firme.*

De su comparecencia escrita surge que el licenciado Robles Sanabria nunca tuvo participación previa en el caso ni contacto directo con alguna de las partes, aunque expone afirmativamente que ha tenido acceso al expediente del caso de divorcio. Es obvio, pues, que salvo el escueto argumento del "criterio corporativo común", no tiene conocimiento previo alguno, y al presente es limitado, por no decir ninguno.

En estas circunstancias no podemos coincidir con el sentir mayoritario expresado en la sentencia que hoy emite este Tribunal, porque automáticamente descalifica *pro tempore* al licenciado Robles Sanabria y a todos los integrantes de la oficina local de Servicios Legales de Utuado. Esa decisión es drástica y opera en el vacío. Coloca al señor Corraliza Rivera en la difícil situación de tener que acudir a otra oficina de Servicios Legales, gestionar asistencia profesional en una entidad distinta o contratar un abogado de la práctica privada.

Si la situación y las alternativas planteadas fueran únicas, quizás las consecuencias serían mínimas. Pero cuando proyectamos la determinación de este Tribunal a través de toda la isla, advertimos claramente los efectos negativos y perjudiciales que tendría en los importantes servicios que presta Servicios Legales de Puerto Rico, Inc. Además, el impacto económico y administrativo incide en la calidad de asistencia legal rápida. Aflora de inmediato un costo social y espiritual impermisible.

Nos explicamos. La opción de que en casos similares el Tribunal designe de oficio a abogados de la práctica privada retribuida, presumiblemente de la localidad, no supera el problema que surgiría cuando el ciudadano pobre acuda, en calidad de reclamante, en búsqueda de orientación, asesoramiento y representación a la oficina local de la Corporación de Servicios Legales de Puerto Rico y le sean negados esos servicios por el solo hecho de que la entidad anteriormente lo representó en un caso de divorcio por consentimiento mutuo. ¿Cuál sería entonces el trámite? ¿Acudir *ex parte* al Tribunal para que, sin existir todavía una acción judicial, le designe de oficio un abogado de la práctica privada retribuida? ¿Referirlo al Procurador de Relaciones de Familia? Ante el número sustancial de esta litigación, ¿no estaríamos sobrecargando indebidamente las funciones de este último funcionario?

Frente a la disyuntiva planteada, descartamos la tesis mayoritaria de descalificación automática fundada en el "criterio corporativo común" o "un solo bufete continuo". Esa norma no debería extenderse incondicionalmente a Servicios Legales de

Puerto Rico, Inc. y a sus oficinas locales. La calificaríamos a los efectos de hacerla extensiva únicamente, como *norma individual,* a los abogados que confrontan alguna de las situaciones siguientes: han brindado asesoramiento directo en el caso previo; han intervenido en un proceso judicial anterior; han suscrito documentos ante los tribunales; han adquirido conocimiento real previo en el desempeño de sus cargos o posteriormente advienen en contacto con información de naturaleza privilegiada no accesible de otro modo. Más allá de estas situaciones, no existe razón alguna para aplicar rigurosamente, y en abstracto, el Canon 21 del Código de Ética Profesional, *supra,* y nuestra jurisprudencia interpretativa.

A la luz de la comparecencia y exposición del licenciado Robles Sanabria, con sujeción a estos pronunciamientos, debimos sostener el dictamen del Tribunal Superior sin menoscabo de que demostrara ante ese foro de instancia la existencia real de un conflicto de intereses fundado en la norma individual. Oportunamente elaboraremos otros fundamentos en abono de nuestra posición.