ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| MAYRA PASTRANA MARTÍNEZ<br><br>Peticionaria<br><br>v.<br><br>MPC ENTERPRISE, INC.; RAÚL PASTRANA ANDÚJAR Y OTROS<br><br>Recurrida | KLCE202400913 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Número: TJ2021CV00487<br><br>Sobre: Descalificación de Abogado |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de octubre de 2024.

Comparece la peticionaria y demandante, la señora Mayra Pastrana Martínez, mediante un recurso de *certiorari*, y nos solicita que revoquemos una *Resolución* del Tribunal de Primera Instancia, Sala Superior de Carolina, notificada el 8 de julio del 2024. En esta se determinó que no ameritaba descalificar al Lcdo. Enrique Peral como el representante legal del recurrido y codemandado Raúl Pastrana Martínez.

Por los fundamentos que expondremos a continuación, Denegamos la expedición del auto solicitado.

## I.

El 12 de octubre de 2021, la peticionaria presentó una demanda en contra de MPC Entrerprises Inc. (MPC), Raúl Pastrana Martínez, y otros demandados, por alegadas violaciones al deber de fiducia y actividades ilegales en contra de los mejores intereses de MPC. En específico, solicitó al tribunal que ordenara el pago de

los daños reclamados, la entrega de los documentos solicitados, y la destitución del recurrido como director y accionista de MPC.

El 14 de diciembre de 2021, el recurrido compareció y presentó su contestación a la demanda, por conducto del Lcdo. Enrique Peral.

Así las cosas, el 1 de mayo de 2024, la peticionaria presentó al Tribunal de Primera Instancia (TPI) una *Moción Solicitando la Descalificación del Abogado de la Parte Codemandada Raúl Pastrana*. En la solicitud de descalificación, alegó la existencia de un conflicto de intereses por motivo de representación legal sucesiva adversa. Argumentó que el Lcdo. Peral fue su abogado, y del recurrido, cuando se tramitó la partición de herencia del padre de ambos, el señor Mariano Pastrana Cortés (en adelante, "Don Mariano"). Sostuvo que el Lcdo. Peral realizó múltiples gestiones que tenían que ver con el litigio en cuestión, mientras era abogado de la peticionaria y la sucesión. En específico, indicó que, bajo su encomienda legal, se realizaron análisis contables y financieros de MPC y las otras empresas del caudal de Don Mariano. Arguyó que el Lcdo. Peral facilitó dicha información a la peticionaria y al resto de la sucesión, pero ahora, funge como asesor personal del recurrido y obstaculiza los reclamos de la peticionaria, que inciden precisamente sobre el mal manejo de las empresas. Además, mencionó que, a raíz de esto, el Lcdo. Peral obtuvo información confidencial de la peticionaria que se podría utilizar contra ella en el litigio.

El 26 de junio de 2024, el recurrido presentó su oposición, suscrita por el licenciado Peral. Sostuvo que nunca ha representado como abogado a la peticionaria en ningún litigio o asunto contencioso, ni tampoco ha tenido acceso a información confidencial de esta. Indicó que, en los trámites hereditarios de

Don Mariano, el trabajo realizado por el letrado consistió en revisar documentos y gestiones encargadas a otros profesionales por los miembros de la sucesión. Además, adujo que, en la partición de herencia, la peticionaria no adquirió ningún interés en ninguna de las corporaciones que son objeto de litigio en la *Demanda* de autos, por lo cual no existe un mismo asunto que implique intereses adversos.

Luego de sometidas las mociones, el TPI notificó su determinación el 8 de julio de 2024, y declaró *No Ha Lugar* la solicitud de descalificación.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 23 de julio de 2024, la peticionaria compareció ante nos mediante el presente recurso de *Certiorari*. En el mismo formula el siguiente señalamiento:

> Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar la solicitud de descalificación del abogado de la parte codemandada Raúl Pastrana Martínez cuando éste representó a la parte demandante previamente en asuntos sobre los cuales sustancialmente trata la reclamación actual.

El recurrido presentó su alegato. Con el beneficio de los escritos de ambas partes, resolvemos.

## II.

### A. Auto de Certiorari

El auto de *Certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012); Pueblo v. Díaz de León, 176 DPR 913, 917 (2009); García v. Padró, 165 DPR 324, 334 (2005). La

característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. IG Builders et al. v. BBVAPR, *supra*.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el auto de *Certiorari*, nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de esta naturaleza. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008).  La referida regla dispone que son los siguientes:

1. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

2. Si la situación de hechos planteada es la más indicada para el análisis del problema.

3. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

4. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

5. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

6. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

7. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En nuestro ordenamiento jurídico impera la norma de que un tribunal apelativo sólo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción. García v. Asociación, 165 DPR 311, 322 (2005); Meléndez Vega v. Caribbean Intl. News, 151 DPR 649, 664 (2000). La discreción, a su vez, está caracterizada por la facultad para decidir distintas formas, esto es, para escoger entre uno o varios cursos de acción. García v. Asociación, *supra*. No obstante, debemos recordar que el ejercicio adecuado de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. Pueblo v. Ortega Santiago, 125 DPR 203, 211 (2001).

## B. Conflicto de Intereses

El Canon 21 del Código de Ética Profesional les impone a los profesionales del derecho un deber de completa lealtad hacia su cliente, 4 LPRA Ap. IX, C. 21. La finalidad de la referida norma deontológica es reglamentar la conducta profesional que, de alguna forma, pueda poner en peligro el principio de confidencialidad que caracteriza la relación fiduciaria de abogado-cliente, y de esa forma menoscabar la imagen de la justicia y la confianza que tiene el ciudadano en el sistema. In re Báez Genoval, 175 DPR 28, 35 (2008).

El referido canon preceptúa tres situaciones en las cuales todos los togados deben abstenerse de incurrir y, por consiguiente, evitar la representación legal, estas son: (1) cuando en la representación concurran múltiples clientes con intereses

encontrados de manera simultánea; (2) cuando se trate de una representación sucesiva adversa; y (3) aceptar representar legalmente a sabiendas de que su juicio profesional puede verse afectado por sus intereses personales. In re Báez Genoval, *supra*, en la pág. 36; In re Torres Viera, 170 DPR 306, 311 (2007). Ante cualquiera de estas situaciones bastará con que el conflicto de intereses sea potencial, para que el abogado vulnere la lealtad absoluta que le debe a su cliente. Sánchez Rodríguez v. López Jiménez, 116 DPR 172, 190 (1985).

La presente controversia nos obliga a enfocarnos, en específico, en la representación sucesiva adversa. El Tribunal Supremo ha establecido que, para que se active la prohibición, es imperativo que exista una relación abogado-cliente dual. In re Soto Cardona, 143 DPR 50, 55-56 (1997); In re Torres Viera, *supra*. Además, también se determinó que, ante un potencial o actual conflicto de intereses, el togado está obligado a renunciar a ambas representaciones. In re Torres Viera, *supra*, en las págs. 311-312. El togado no tendrá la facultad para aducir que no utilizará las confidencias de un cliente en perjuicio del otro. Tal prohibición es insoslayable por lo que los clientes no podrán consentir a la representación conflictiva. In re Báez Genoval, supra, en la pág. 37.

Nuestro máximo foro determinó que, ante la eventualidad de una representación sucesiva adversa, surge una presunción irrefutable de que la información confidencial que haya provisto el cliente anterior al letrado será utilizada por este último en beneficio del nuevo cliente, cuyos intereses son antagónicos a los del cliente anterior. In re Carreras Rovira y Suárez Zayas, 115 DPR 778, 792 (1984).

Ahora bien, al determinar si un abogado incurrió en la representación sucesiva de intereses encontrados, es preciso analizar la conducta de éste a la luz del criterio de relación sustancial. A tenor con dicho criterio, el cliente sólo tiene que demostrar que la controversia legal en la que el abogado comparece en su contra está sustancialmente relacionada con la causa de acción en la que el abogado previamente le representó. In re Carreras Rovira y Suárez Zayas, *supra*, en la pág. 791.

Por otro lado, el Canon 38 del Código de Ética Profesional (Canon 38), *supra*, puntualiza que los dos valores principales con los que debe cumplir un abogado son la dignidad y el honor al ejercer la abogacía y en su vida privada. Para ello, preceptúa una máxima de suma importancia para el ordenamiento deontológico de la profesión legal: el deber de evitar hasta la apariencia de conducta profesional impropia. Asimismo, ha quedado meridanamente claro en nuestra jurisprudencia que un abogado tiene la obligación de evitar, tanto en la realidad como en la apariencia, la impresión de conducta conflictiva y tienen el deber de lucir puro y libre de influencias extrañas a su gestión profesional. In re Morell Corrada y Alcover García, 158 DPR 791, 811 (2003).

### C. Descalificación de Representación Legal

La Regla 9.3 de Procedimiento Civil, dispone, en lo pertinente al caso de autos, lo siguiente:

> El Tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte, imponer sanciones económicas o de otra naturaleza o descalificar a un abogado o abogada que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as). 32 LPRA Ap. V, R. 9.3.

Siendo así, "el Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello abone a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos". Job Connection Center v. Sups. Econo, 185 DPR 585, 595-596 (2012), citando a Meléndez v. Caribbean Int'l. News, 151 DPR 649, 661 (2000). Las órdenes de descalificación pueden proceder para la prevención de posibles violaciones de los Cánones de Ética Profesional o "para evitar actos disruptivos de los abogados durante el trámite de un pleito". Job Connection Center v. Sups. Econo, *supra*.

No obstante, los procedimientos de descalificación de abogados no constituyen acciones disciplinarias per se. K-Mart Corp. v. Walgreens of P.R., Inc., 121 DPR 633, 638 (1988). Sin embargo, como las descalificaciones son consideradas remedios drásticos que, deben ser evitados si existen medidas menos onerosas que aseguren la integridad del proceso judicial y trato justo a las partes, las mismas no deben ser impuestas ligeramente. Job Connection Center v. Sups. Econo, *supra*, a las págs. 596-597. Para lograr este propósito, los tribunales de instancia "deberán realizar un balance entre el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial". *Id*., a la pág. 597.

Una descalificación puede ser ordenada por el tribunal *motu proprio* o a solicitud de una parte. Job Connection Center v. Sups. Econo, *supra*. En los casos en los que es el tribunal el que declara *motu proprio* la descalificación, no es necesario que se aporte prueba de que se incurrió en una violación de naturaleza ética, toda vez que, en caso de duda, la apariencia de impropiedad podrá ser utilizada a favor de la descalificación. Job Connection Center

v. Sups. Econo, *supra*, citando a <u>Meléndez v. Caribbean Int'l. News</u>, *supra*; <u>Liquilux Gas Corp. v. Berríos, Zaragoza</u>, 138 DPR 850, 864 (1995); <u>In re Carreras Rovira y Suárez Zayas</u>, 115 DPR 778, 792 (1984).

Ahora bien, si es una de las partes involucradas en el pleito la que solicita la descalificación de uno de los representantes legales, "la mera presentación de una moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión". <u>Job Connection Center v. Sups. Econo.</u>, *supra*. En estos casos, el tribunal de instancia deberá analizar los siguientes factores: (1) si la parte que solicita la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible violación ética involucrada; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el "expertise" de los abogados implicados; y (4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y el propósito detrás de la descalificación. <u>Flecha v. Lebrón</u>, 166 DPR 330, 366-367 (2005); <u>Otaño v. Vélez</u>, 141 DPR 820, 828 (1996) (*Per Curiam*); <u>Liquilux Gas Corp. v. Berríos, Zaragoza</u>, *supra*, a la pág. 865.

A los fines de analizar si procede declarar *Ha Lugar* una moción de descalificación, debe tomarse en consideración si la continuación de la representación legal le causaría un perjuicio o desventaja indebida en el caso a quien la solicita. <u>Job Connection Center v. Sups. Econo</u>, *supra*, a la pág. 598; <u>Flecha v. Lebrón</u>, *supra*, a la pág. 367, citando a <u>Otaño v. Vélez</u>, *supra*. La anterior determinación debe complementarse con el interés de brindarle la oportunidad al representante legal cuya descalificación se solicita, para que se exprese en cuanto a sus méritos y presente prueba

en su defensa. Job Connection Center v. Sups. Econo, *supra*. Este derecho cumple con las exigencias del debido proceso de ley. Job Connection Center v. Sups. Econo, *supra*, citando a Meléndez v. Caribbean Int'l. News, *supra*, a la pág. 670. A los fines de resolver la moción de descalificación, el tribunal debe tomar en cuenta los factores antes expuestos, además de considerar el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente. Flecha v. Lebrón, supra, citando a Otaño v. Vélez, *supra*.

El Tribunal Supremo razonó que, en particular, los dictámenes en los cuales se ordena la descalificación de un abogado pueden tener el efecto potencial de que sean afectados los derechos de las partes involucradas en el pleito y el trámite de los procedimientos. Por lo tanto, concluyó que las determinaciones en cuanto a la descalificación de un abogado eran revisables de conformidad con la Regla 52.1 de Procedimiento Civil, supra, toda vez que "esperar a una apelación constituiría un fracaso irremediable a la justicia". *Id*.

El Tribunal Supremo ha expresado que los tribunales apelativos estamos llamados a revisar la decisión sobre la descalificación, siempre y cuando se demuestre que el foro de instancia abusó crasamente de su discreción, actuó con perjuicio o parcialidad, se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esta etapa evitaría un perjuicio sustancial. ORIL v. El Farmer Inc., 204 DPR 229, 244 (2020). Además, la descalificación de un abogado no deberá imponerse ligeramente, puesto que, esta afecta aspectos tales como los derechos de las partes y el trámite de los procedimientos. *Id*. La descalificación únicamente procederá cuando sea estrictamente necesario, pues

se considera un remedio drástico que debe ser evitado si existen medidas menos onerosas que puedan asegurar la integridad del proceso judicial y el trato justo de las partes. Job Connection Center v. Sups. Econo, supra, pág. 597; ORIL v. El Farmer Inc., supra, pág. 244.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe procedemos a resolver.

**III.**

El recurso que atendemos versa sobre el conflicto resultante de alegadas representaciones sucesivas de la peticionaria, como integrante de la sucesión de Don Mariano, y posteriormente del recurrido, por parte del Lcdo. Enrique Peral. Luego de un análisis ponderado del expediente, entendemos que el foro primario actuó correctamente, a pesar de no fundamentar su decisión, al determinar que no procedía la descalificación del referido letrado.

Cónsono con la jurisprudencia de nuestro Tribunal Supremo, para determinar que en efecto existe un conflicto de intereses que impida la representación sucesiva adversa, será suficiente que ambas representaciones estén sustancialmente relacionadas con la causa de acción en la que el abogado previamente le representó. Luego de revisar minuciosamente la totalidad del expediente ante nuestra consideración, constatamos que eso no fue lo ocurrido en este caso.

La alegada relación abogado-cliente existente entre la peticionaria y el Lcdo. Peral tiene su génesis cuando el aquí recurrido lo contrató para gestionar la partición de herencia de su difunto padre. Según la factura que suscribió el letrado a la sucesión de Don Mariano el 26 de noviembre de 2018, este se encargó de trámites relacionados a la declaratoria de herederos, el inventario y avalúo de bienes del caudal, y a discutir

alternativas de partición. Aun así, consta de las alegaciones de la peticionaria y demandante que los acuerdos sobre división y adjudicación de la herencia se llevaron a cabo a puerta cerrada, sin la participación del Lcdo. Peral, y mediante un acuerdo privado de partición de herencia.

Mediante dicho acuerdo, la peticionaria no adquirió ningún interés en ninguna de las corporaciones que son objeto de litigio en la controversia en cuestión. No fue hasta más adelante que la peticionaria adquirió participación en la compañía MPC, mediante un acuerdo de cesión de acciones, en donde el Lcdo. Peral no estuvo involucrado. El hecho de que las alegaciones de la *Demanda* estén relacionadas con MPC, una de las compañías que constituía el caudal hereditario de Don Mariano, no genera una relación sustancial entre ambos asuntos.

Además, la peticionaria alegó que el Lcdo. Peral adquirió información confidencial durante la partición de herencia que podría utilizar en el litigio, pero no especificó cuál era esta información, ni cómo se obtuvo. Tampoco hizo referencia específica a las gestiones realizadas por el Lcdo. Peral que tienen que ver con el presente litigio, ni cómo se relacionan entre sí. Parecería ser que el conflicto de intereses que alega la peticionaria surgió dos años después que esta advino en conocimiento de que el Lcdo. Peral representaba al recurrido en el pleito.

Conforme a lo establecido por nuestro Tribunal Supremo, estamos llamados a revisar la decisión sobre la descalificación, siempre y cuando se demuestre que el foro de instancia abusó crasamente de su discreción, actuó con perjuicio o parcialidad, o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. La descalificación únicamente procederá cuando sea estrictamente necesario, pues atenta

contra el derecho que tienen las partes de elegir su representación legal.

Entendemos que en el presente caso el Lcdo. Peral está representando a un cliente con intereses adversos a la peticionaria, pero no surge del expediente que ocurra una representación legal sucesiva adversa. Ante ello, nos parece correcto, que la petición de descalificación contra el Lcdo. Peral no prosperó, tal como lo decretó el TPI en la resolución que revisamos. Resolvemos, pues, que, en ausencia de abuso de discreción, perjuicio, parcialidad o error manifiesto, no intervendremos en la determinación del TPI al denegar la solicitud de descalificación de la representación legal de los recurridos.

## IV.

Por los fundamentos antes expuestos, se Deniega la expedición del auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones