Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| AGUSTIN CRESPO RIVERA; JOSÉ ANTONIO CRESPO RIVERA; JUAN JOSÉ CRESPO RIVERA Y OTROS<br><br>Demandantes-Recurridos<br><br>V.<br><br>JUAN JOSÉ CRESPO RIVERA; JUAN JOSÉ CRESPO HILL; AGUSTÍN CRESPO RIVERA Y OTROS<br><br>Demandados-Peticionarios | TA2025CE00132 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Civil Núm.: FA2024CV00289(302)<br><br>Sobre:<br><br>ACEPTACIÓN, RENUNCIA, REMOCIÓN O SUSTITUCIÓN DEL ALBACEA; DIVISIÓN O LIQUIDACIÓN DE LA COMUNIDAD DE BIENES HEREDITARIOS, IMPUGNACIÓN O NULIDAD DE TESTAMENTO; ACCIÓN REIVINDICATORIA; DAÑOS, COBRO DE DINERO - ORDINARIO |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

**Brignoni Mártir, Jueza Ponente**

SENTENCIA

En San Juan, Puerto Rico, a 25 de agosto de 2025.

Comparece la parte peticionaria, compuesta por Juan José Crespo Rivera, Juan José Crespo Hill (Crespo-Crespo), el Fideicomiso CRCH Trust y el Fideicomiso JCR-IRM-2 (en conjunto los peticionarios) y solicitan que revisemos la *Resolución* emitida y notificada el 9 de junio de 2025, por el Tribunal de Primera Instancia, Sala de Fajardo (TPI). Mediante el referido dictamen, el TPI descalificó al Lcdo. José Luis Novas Debién (Lcdo. Novas Debién), de representar a los Crespo-Crespo y los fideicomisos.

Junto con el recurso, los peticionarios presentaron *"Moción en Auxilio de Jurisdicción"* en la que solicitaron la paralización de los procedimientos ante el foro de instancia.[1]

---

[1] Lo anterior, ante el hecho de que, entre otros asuntos, aún se encuentran pendientes ante el foro primario solicitudes de desestimación y una moción solicitando remedio provisional y nombramiento de síndico para administrar ciertas propiedades.

Mediante *Resolución* emitida y notificada el 11 de julio de 2025, decretamos la paralización de los procedimientos ante el foro primario y concedimos un término a la parte recurrida, para presentar su oposición al auto de *certiorari*.

La parte recurrida, compuesta por Agustín Crespo Rivera (Agustín Crespo) y José Antonio Crespo Rivera (José Antonio Crespo) (en conjunto los recurridos) comparecieron mediante "Oposición Enmendada a la Expedición del Auto de Certiorari" el 15 de julio de 2025.

Evaluado el recurso de *certiorari,* así como la oposición de los recurridos, por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* incoado y confirmamos la resolución recurrida*.* En consecuencia, se levanta la paralización de los procedimientos ante el foro de instancia y se ordena la continuación de los procedimientos.

**I.**

En vista de las controversias surgidas en los casos presentados en el foro de instancia, consignamos una relación de los hechos medulares, incluyendo los que este foro apelativo atendió previamente, todos conducentes a la controversia que nos ocupa.

**-A-**

El 2 de abril de 2024, los recurridos presentaron una demanda sobre remoción de albacea, nulidad de disposición testamentaria y división de comunidad hereditaria en contra de los peticionarios (FA2024CV00289). En síntesis, los recurridos adujeron que el Sr. Agustín Crespo Rivera y el peticionario Sr. Juan José Crespo Rivera son hijos de Don Juan Crespo Ramos (Don Juan Crespo) y Doña Ivonne Rivera Mujica (Doña Ivonne Rivera), y que el Sr. Juan José Crespo Hill es nieto de estos. Conforme expuesto en la demanda, Don Juan Crespo y Doña Ivonne Rivera estuvieron casados bajo el régimen de sociedad legal de gananciales y el 8 de octubre de 2020 el Tribunal de Primera Instancia dictó sentencia de divorcio[2].

---

[2] SJ2019RF01377.

Respecto a Don Juan Crespo, los recurridos alegaron que el 4 de marzo de 2020, éste otorgó escritura de testamento ante el Notario Público Manuel E. Sarmiento, en el que instituyó en partes iguales en la porción de legítima a sus tres hijos, a saber: Juan José, Agustín y José Antonio, todos de apellidos Crespo Rivera. En cuanto a la porción de mejora, Don Juan Crespo designó en partes iguales a su hijo y nieto–aquí peticionarios Juan José Crespo Rivera y Juan José Crespo Hill. Asimismo, nombró al peticionario Juan José Crespo Rivera como albacea testamentario. Los recurridos añadieron que el causante falleció el 6 de agosto de 2022 y que el peticionario Juan José Crespo Rivera presentó ante el Tribunal de Primera Instancia, Sala de San Juan, una petición para que se le expidan las Cartas Testamentarias[3]. El 14 de septiembre de 2022, la referida sala de instancia expidió las cartas testamentarias.

En cuanto a Doña Ivonne Rivera, los recurridos expusieron que ésta otorgó escritura de testamento abierto el 4 de diciembre de 2019 ante el Notario Público Fernando Rabell Echegaray, en el que instituyó en partes iguales a sus tres hijos, Juan José, Agustín y José Antonio, todos de apellidos Crespo Rivera. Respecto al nombramiento de albacea testamentario, Doña Ivonne Rivera nombró a la Sra. Marianela Vidal Rivera. Los recurridos informaron que Doña Ivonne Rivera falleció el 21 de octubre de 2023. La albacea presentó una solicitud de cartas testamentarias ante el Tribunal de Primera Instancia, Sala de San Juan[4]. Mediante resolución del 22 de noviembre de 2023, el mencionado foro expidió las correspondientes Cartas Testamentarias.

Los recurridos alegaron que, luego del fallecimiento de los causantes, éstos hicieron acercamientos a los peticionarios para resolver los asuntos hereditarios, pero dichas gestiones fueron infructuosas. Por ello, solicitaron varios remedios respecto a las causas de acción instadas, todos conducentes a que se removiera al Sr. Juan José Crespo Rivera del cargo

---

[3] Civil número SJ2022CV08226.
[4] Civil número SJ2023CV10810.

de albacea y, además, se decretara la nulidad de las disposiciones testamentarias a su favor, bajo el fundamento de que estas son incompatibles con el Código Civil de 2020.

Por su parte, el 5 de abril de 2024, los Crespo-Crespo, representados por el Lcdo. Novas Debién, presentaron una demanda sobre sobre Nulidad de Destitución de Fiduciario, Nulidad de Nombramiento y Aceptación del Cargo de Fiduciario; Nulidad de Escritura de Cesión de Inmueble, Nulidad de Escritura de Terminación de Fideicomiso, Reivindicación de Inmueble y Daños y Perjuicios (LU2024CV00057), en contra de los recurridos y los notarios autorizantes de los referidos instrumentos.[5]

En síntesis, alegaron que el 15 de noviembre de 2017, Don Juan Crespo y su entonces esposa, Doña Ivonne Rivera, constituyeron el Fideicomiso CRCH Trust (Fideicomiso CRCH), en el que designaron como beneficiarios o fideicomisarios a Juan José Crespo Rivera y a su hijo, Juan José Crespo Hill y que en dicho Fideicomiso se estableció la forma y manera de llevarse a cabo la destitución y el nombramiento del sustituto. Estos añadieron que el 15 de noviembre de 2017, CRCH Trust adquirió a título de compraventa por la suma de $425,000.00 la Finca Núm. Dos (2) del Barrio Pitahaya en Luquillo, Finca Núm. 13,012, inscrita en la Sección 1 del Registro de la Propiedad de Fajardo.

Los Crespo-Crespo añadieron que Doña Ivonne Rivera había presentado el 23 de junio de 2021 una acción civil (FA2021CV00460) en la que instó varias causas de acción en contra de Don Juan Crespo y otros—incluido su nieto Juan José Crespo Hill. En cuanto a este, Doña Ivonne Rivera solicitó su destitución como fiduciario de CRCH Trust, la terminación del fideicomiso y el retracto de la Finca núm. 13,012, así como la restitución de los bienes y resarcimiento en concepto de daños y perjuicios.

Por otro lado, y aún pendiente de adjudicación el caso FA2021CV00460, el 12 de abril de 2022, Doña Ivonne Rivera, notificó un *Aviso de Terminación de Fiduciario y Designación de Nuevo Fiduciario del*

---

[5] *Véase* páginas 402-418 del Apéndice del *Recurso de Certiorari*.

*Fideicomiso CRCH* en el que destituyó a Juan José Crespo Hill de su cargo como fiduciario y en sustitución de éste, nombró a Agustín Crespo Rivera. El 17 de noviembre de 2022, Agustín Crespo Rivera, en calidad de Fiduciario y a nombre de CRCH Trust, otorgó la Escritura Número 92 de Cesión de Inmueble, en la que cedió el inmueble objeto de controversia a su favor y de Doña Ivonne Rivera[6]. Asimismo, el 26 de octubre de 2022, Agustín Crespo otorgó la Escritura Núm. 8 de Terminación de Fideicomiso.

El 27 de octubre de 2022, Doña Ivonne Rivera presentó una solicitud de desistimiento en el caso FA2021CV00460[7]. El 14 de diciembre de 2022, el TPI declaró con lugar la solicitud de desistimiento y decretó el archivo del caso, con perjuicio.[8] En virtud de lo anterior, los Crespo-Crespo arguyeron que la referida sentencia constituía una adjudicación en los méritos. Por consiguiente, estos argumentaron que, tanto la escritura de cesión de inmueble como la escritura de terminación de fideicomiso, eran nulas por no haberse realizado de conformidad con los términos del fideicomiso ni con las disposiciones de la Ley de Fideicomisos. Por ende, solicitaron se decretara la nulidad de ambos instrumentos, y la reivindicación de la Finca Núm. 13,012 a favor del Fideicomiso CRCH Trust, del cual afirman son los fideicomisarios.

Trabada la controversia, el 12 de julio de 2024 el foro de instancia consolidó *motu proprio* los casos LU2024CV00057 y FA2024CV00289.

**-B-**

Consolidados los casos antes mencionados, el 5 de julio de 2024, los Crespo-Crespo y los fideicomisos CRCH Trust y JCR-IRM-2, también representados por el Lcdo. Novas Debién, presentaron una demanda sobre nulidad de nombramiento y aceptación del cargo de fiduciario, nulidad de donación de acciones, nulidad de terminación de fideicomiso y nulidad de escrituras de permuta y compraventa, entre otras causas

---

[6] Mediante moción presentada el 7 de septiembre de 2022, en el caso **FA2021CV00460,** Agustín Crespo Rivera solicitó enmienda a la Demanda para comparecer como codemandante. *Véase* Entrada Núm. 91 de SUMAC.
[7] Entrada Núm. 117 del FA2021CV00460.
[8] Entrada Núm. 136 del FA2021CV00460.

(FA2024CV00663)[9]. En síntesis, los peticionarios alegaron que, dado a que la constitución del fideicomiso se realizó en escritura pública, tanto el nombramiento como aceptación de Agustín Crespo como fiduciario debió realizarse en igual instrumento conforme requiere la Ley de Fideicomisos[10]. En virtud de ello, solicitaron se decrete la nulidad de los actos realizados por Agustín Crespo, entre otros remedios.

Así las cosas, el 5 de agosto de 2024 el TPI ordenó la consolidación del FA2024CV00663 con los casos LU2024CV00057 y FA2024CV00289.

**-C-**

Luego de varios trámites procesales y apelativos[11], el 1 de mayo de 2025, los recurridos presentaron una contestación a demanda, una moción de desestimación y una moción de descalificación. En lo aquí pertinente, los recurridos plantearon falta de legitimación activa del Fideicomiso JCR-IRM-2 para comparecer como parte demandante, por entender que este carece de personalidad jurídica ante su alegada terminación válida y, en la alternativa, por falta de capacidad jurídica representativa de los Crespo-Crespo para comparecer en su nombre. Asimismo, levantaron la falta de legitimación activa de los peticionarios individualmente para instar acciones derivativas sobre unas corporaciones en las que estos no son ni han sido accionistas. Ante ello, los recurridos solicitaron la descalificación del Lcdo. Novas Debién, pues alegaron que este representaba de forma simultánea al Fideicomiso JC-IRM-2 –una entidad jurídicamente inexistente tras su terminación mediante escritura pública– y a los Crespo-Crespo. Alegaron que el único vínculo de los peticionarios con el fideicomiso es que previo a su terminación, estos fueron nombrados beneficiarios sucesores, pero no tuvieron nunca capacidad representativa ni administrativa sobre el mismo. De igual forma, los recurridos añadieron que el Lcdo. Novas Debién

---

[9] Los peticionarios solicitaron enmienda a la demanda los efectos de incluir a Acrecent Financial LLC como parte indispensable y corregir el párrafo 9 de la primera demanda a los efectos de consignar que Firtstbank otorgó tres (3) escrituras de hipoteca sobre tres inmuebles.

[10] Insertar LPRA.

[11] Este foro apelativo en el recurso KLCE202400897 resolvió que la sentencia por desistimiento en el pleito FA2021CV00460 no constituye cosa juzgada.

compareció en representación del Fideicomiso CRCH Trust, a solicitud individual del peticionario Juan José Crespo Hill, quien fue destituido como fiduciario mediante escritura pública. Por lo anterior, los recurridos expusieron que las actuaciones del Lcdo. Novas Debién, al asumir representación legal simultánea de los Crespo-Crespo y los fideicomisos están reñidas por lo establecido en los Cánones de Ética Profesional) sobre conflicto de intereses y sinceridad y honradez.

Oportunamente, los peticionarios presentaron *Oposición a Moción de Descalificación* en la que incorporaron las alegaciones vertidas en su escrito de oposición a la solicitud de desestimación. En síntesis, alegaron que la terminación de los fideicomisos en controversia es nula, por lo que, al no tener efecto jurídico alguno, los fideicomisos en disputa subsisten íntegramente. En cuanto a la representación individual de los peticionarios como fideicomisarios, sostuvieron que el Artículo 38 de la Ley de Fideicomisos reconoce la legitimación de un fideicomisario agraviado para acudir ante el TPI en solicitud de remedios. Así también, apoyaron sus alegaciones a luz de los resuelto por el TSPR en el caso *Liquilux Gas Corp. v. Berríos, Zaragoza*, 138 DPR 850, 863 (1995). Por lo anterior, solicitaron se declare no ha lugar la solicitud de descalificación.

En respuesta, los recurridos presentaron una *Breve Réplica a la "Oposición a Moción de Descalificación"*[12]. En lo aquí pertinente, estos argumentaron que indistintamente la posición de los peticionarios sobre la existencia de los fideicomisos JCR-IRM-2 y CRCH Trust, e independientemente de los méritos de las demandas instadas por estos, es irrebatible que los Crespo-Crespo, al no ser los fiduciarios de los fideicomisos en controversia, carecían y carecen de toda capacidad y autoridad representativa para contratar servicios legales con el Lcdo. Novas Debién e instar acciones judiciales a nombre de los fideicomisos. Por ello, arguyeron que la comparecencia del Lcdo. Novas-Debién en nombre de entidades jurídicas inexistentes, o sin autorización representativa válida de

---

[12] Entrada Núm. 100 del caso FA2024CV00289.

los Crespo-Crespo para contratarlo, va en contra de los Cánones de Ética Profesional y la Regla 9.3 de Procedimiento Civil, por lo que procede su descalificación como representante de los Crespo-Crespo y de los fideicomisos en controversia.

El 9 de junio de 2025, el TPI emitió y notificó la *Resolución*[13] recurrida. En lo aquí pertinente, el foro primario determinó que ante la posibilidad de existir intereses encontrados entre los Crespo-Crespo y los fideicomisos JCR-IRM-2 y CRCH, bajo el supuesto que dichas entidades se determinen vigentes, procedía la descalificación del Lcdo. Novas Debién en esta etapa de los procedimientos. El TPI añadió que la posibilidad de conflicto no solo podía perjudicar a las partes, sino que también podría afectar el ordenado trámite del caso, a saber, la preparación del informe de conferencia con antelación a juicio, interrogatorio y contrainterrogatorio en el juicio. En consecuencia, el TPI declaró Ha Lugar la solicitud de descalificación.

Oportunamente, los peticionarios solicitaron reconsideración. El 12 de junio de 2025, el TPI, luego de evaluar los escritos presentados por las partes, declaró No Ha Lugar la solicitud de reconsideración.

Inconforme, los peticionarios comparecen ante nos y le imputan al TPI la comisión de los siguientes señalamientos de error:

1. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE PROCEDÍA LA DESCALIFICACIÓN DE LA REPRESENTACIÓN LEGAL DE LOS PETICIONARIOS EN BASE A POSIBILIDAD DE CONFLICTO DE INTERESES, SIN ESPECIFICAR DE QUE FORMA LOS INTERESES DE LOS PETICIONARIOS JUAN JOSÉ CRESPO HILL Y JUAN JOSÉ CRESPO RIVERA ERAN ADVERSOS A LOS INTERESES DE LOS FIDEICOMISOS DE LOS CUALES ERAN BENEFICIARIOS, O VICEVERSA.

2. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCALIFICAR A LA REPRESENTACIÓN LEGAL DE LOS PETICIONARIOS SIN PRIMERO DETERMINAR HACER EL ANÁLISIS DE LOS FACTORES EXPUESTOS EN EL CASO DEL TRIBUNAL SUPREMO DE <u>OTAÑO V. VÉLEZ</u>, 141 DPR 820 (1996).

3. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCALIFICAR A LA REPRESENTACIÓN LEGAL DE LOS PETICIONARIOS SIN PRIMERO DETERMINAR LA LEGITIMACIÓN DE LOS DEMANDADOS PARA SOLICITAR LA DESCALIFICACIÓN.

---

[13] Entrada Núm. 127 FA202400289.

4. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCALIFICAR A LA REPRESENTACIÓN LEGAL DE LOS PETICIONARIOS SIN SOPESAR EL DERECHO QUE LE ASISTE A LOS PETICIONARIOS A ESCOGER CON LIBERTAD EL ABOGADO QUE LOS REPRESENTE.

5. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCALIFICAR A LA REPRESENTACIÓN LEGAL DE LOS PETICIONARIOS SIN BRINDARLE A DICHA REPRESENTACIÓN LEGAL EL DERECHO A SER OÍDO Y PRESENTAR PRUEBA EN SU DEFENSA ANTES DE RESOLVER LA SOLICITUD DE DESCALIFICACIÓN.

6. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCALIFICAR LA REPRESENTACIÓN LEGAL DE LOS PETICIONARIOS SIN DETERMINAR PRIMERO QUE DICHA REPRESENTACIÓN LEGAL LES CAUSABA PERJUICIO O DESVENTAJA INDEBIDO A LOS DEMANDADOS, CONFORME LA DOCTRINA ESTABLECIDA EN EL CASO DE JOB CONNECTION CENTER V. SUPS. ECONO, 185 DPR 585 (2012).

7. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCION DE RECONSIDERACION ADOPTANDO EL ARGUMENTO DE LOS RECURRIDOS EN SU OPOSICION QUE LA MISMA ERA INSUFICIENTE BAJO LA REGLA 47 DE PROCEDIMIENTO CIVIL.

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

**II.**

**-A-**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto.

Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 62-63, 215 DPR ____ (2025), delimita los criterios para la expedición de un auto de *certiorari.* Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera et al v. Arcos Dorados et al*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023); *Rivera et al v. Arcos Dorados et al*, supra; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**G.** Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto." *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Íd; Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. *íd*. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**-B-**

El Tribunal Supremo ha expresado que una orden relacionada con la descalificación de un abogado es revisable a tenor con la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, ya que "esperar a una apelación constituiría un fracaso irremediable a la justicia", por las repercusiones que ello pudiera ocasionar, en las partes, el abogado y el trámite de los procedimientos. *Job Connection Center v. Sups. Econo*, 185 DPR 585, 601 (2012). Así pues, una orden o resolución interlocutoria sobre descalificación es uno de los supuestos legales en que, por excepción, se permitirá acceder, mediante el recurso discrecional de certiorari, a este foro apelativo.  La determinación de un tribunal de instancia respecto a la

descalificación de un abogado está impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso.[14] Sin embargo, dicha discreción no es óbice para que los foros apelativos revisen estas determinaciones.[15] El Tribunal Supremo ha resuelto expresamente que las órdenes de descalificación de abogado son revisables mediante el auto de *certiorari* dado que esperar a una apelación podría constituir un fracaso irremediable de la justicia.[16]

En este contexto, la Regla 40 del Reglamento de este Tribunal[17] establece los criterios que debemos tomar en consideración al atender una solicitud para revisar tales determinaciones. De tal forma, los tribunales apelativos estamos llamados a revisar la decisión sobre la descalificación de un abogado solamente si se demuestra que hubo un craso abuso de discreción, que el foro primario actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial.[18] Lo anterior le impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro primario.[19]

**-C-**

El Tribunal de Primera Instancia tiene la facultad de ordenar la descalificación de los abogados que participan en un caso, bien para prevenir violaciones a los cánones del Código de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito.[20] Esta facultad es inherente al poder del Tribunal para gobernar los procedimientos ante sí. Su ejercicio no tiene la naturaleza de una medida disciplinaria, poder que está reservado al Tribunal Supremo de Puerto Rico, sino que constituye una determinación procesal.[21]

---

[14] *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).
[15] *Job Connection Center v. Sups. Econo*, 185 DPR 585, 602 (2012).
[16] *Íd.,* pág. 601.
[17] 4 LPRA Ap. XXII-B, R. 40.
[18] Véase, además, *Job Connection Center v. Sups. Econo*, supra, pág. 602; *Meléndez v. Caribbean Int'l. News*, supra, págs. 664-665; *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 181 (1993); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[19] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[20] *Orill v. El Farmer Inc.,* 204 DPR 229, 240-241 (2020); *Meléndez v. Caribbean Int'l. News*, supra, pág. 661.
[21] *Meléndez v. Caribbean Int'l. News*, supra, págs. 660-661.

La descalificación puede ser ordenada a solicitud de parte o por el Tribunal *motu proprio*.[22] En las situaciones en que sea la parte contraria quien solicite la descalificación, el tribunal deberá considerar si quien solicita este remedio tiene legitimación para hacerlo, la gravedad del conflicto de interés implicado, la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados involucrados, la etapa del procedimiento en que surja la controversia y su posible efecto en cuanto a la resolución justa, rápida y económica del caso, y el propósito detrás de la descalificación, esto es, si la solicitud está siendo utilizada para dilatar los procedimientos.[23]

El Canon 21 del Código de Ética Profesional[24] impone a todo abogado el deber de evitar tres situaciones básicas: (1) aceptar la representación legal cuando a su juicio ésta pueda verse afectada por sus expectativas o intereses personales, (2) aceptar la representación legal simultánea de dos clientes distintos con intereses contrapuestos, y (3) aceptar la representación de un cliente en asuntos que puedan afectar cualquier interés de un cliente anterior.[25]

En lo pertinente al caso que nos ocupa, el segundo y tercer aspecto de la prohibición, tienen el firme propósito de garantizarle a todo cliente que las confidencias y los secretos que compartió con su abogado no serán utilizados en su contra, en beneficio de una representación antagónica, de un cliente simultáneo o posterior.[26] De este modo, un abogado está impedido de asumir la representación simultánea o sucesiva de dos clientes, independientemente del consentimiento voluntario e informado otorgada por éstos, cuando entre ambas representaciones exista alguna posibilidad de conflicto de intereses.[27] Incluso en caso de dudas, el abogado está obligado a renunciar.[28]

---

[22] *Íd.,* pág. 660.
[23] *Otaño v. Vélez*, 141 DPR 820, 828 (1996); *Luquilux Gas Corp. v. Berríos, Zaragoza*, 138 DPR 850, 864-865 (1995).
[24] 4 LPRA Ap. IX.
[25] *Otaño v. Vélez*, supra, pág. 826.
[26] *Íd.*
[27] *In re Carreras Rovira y Suárez Zayas,* 115 DPR 778, 793 (1984).
[28] *In re Toro Cubergé*, 140 DPR 523, 533 (1996).

Por su parte, el Canon 38 del Código de Ética Profesional[29] establece que los abogados deben esforzarse al máximo de su capacidad por exaltar el honor y dignidad de su profesión, aunque eso signifique sacrificios personales. Además, deberán evitar hasta la mera apariencia de conducta profesional impropia. Los abogados deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen. Por esa razón, se les recomienda actuar a un nivel superior y no al margen de lo establecido por el Código de Ética Profesional. La apariencia de conducta profesional impropia puede ser muy nociva para el respeto de la sociedad por sus instituciones de justicia. Además de afectar la confianza que los clientes depositan en sus abogados de la misma forma que lo haría la impropiedad ética.[30]

**III.**

En su recurso, los peticionarios alegan que el foro primario incidió al ordenar la descalificación Lcdo. Novas Debién de representarlos. En síntesis, estos argumentan que el TPI no hizo el análisis de factores establecidos por jurisprudencia previo a ordenar la descalificación del letrado y que tampoco particularizó de qué forma los intereses de los Crespo-Crespo eran adversos a los intereses de los fideicomisos. No les asiste la razón.

De un examen minucioso de la determinación recurrida, se desprende que el foro primario tomó en consideración los referidos factores en su análisis. De dicho análisis, el foro *a quo* determinó que los recurridos tenían legitimación activa para presentar la solicitud de descalificación, que existía un perjuicio sustancial que los afectaba, particularmente la integridad del proceso judicial y tramites procesales que se ventilaban ante el TPI, la posibilidad de conflicto, así como la etapa en que se presentó la solicitud de descalificación. Aun así, las circunstancias del caso demostraban la alta posibilidad de la existencia de intereses encontrados entre los peticionarios, los Crespo-Crespo y los intereses de los extintos fideicomisos, cuyo

---

[29] 4 LPRA Ap. IX.
[30] *In re Morales Lozada,* 192 DPR 239, 244 (2015).

fiduciario es Agustín Crespo. No hay duda de que el Lcdo. Novas Debién se expuso al riesgo de incurrir en una representación simultánea adversa, lo que está en conflicto tanto con la Regla 9.1 de Procedimiento Civil, como con los Cánones de Ética Profesional aplicables. En extrema cautela y sin que constituya una acción disciplinaria no erró el TPI al ordenar la descalificación del Lcdo. Novas Debién de ambas representaciones.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se confirma la *Resolución* recurrida. Se levanta la paralización de los procedimientos.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones