ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JANNETTE DÍAZ CARRASQUILLO<br><br>Recurrida<br><br>v.<br><br>CONCILIO DE SALUD INTEGRAL DE LOÍZA, INC.<br><br>Peticionario | TA2025CE00151 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. LO2025CV00046<br><br>Sobre: Despido Injustificado (Ley Núm. 80), Discrimen por Impedimento (Ley Núm. 44) |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Comparece ante nos el peticionario, el Concilio de Salud Integral de Loíza, Inc. (en adelante, CSILO o peticionario), y nos solicita que revoquemos la *Resolución* emitida el 7 de julio de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala de Carolina. Mediante esta, el Foro Primario descalificó al licenciado Víctor Rivera Torres (en adelante, Lcdo. Rivera Torres) como representante legal de CSILO. Junto a su recurso, el peticionario presentó una *Moción Urgente en Auxilio de Jurisdicción.* Al evaluar la controversia planteada, el 16 de julio de 2025, ordenamos la paralización inmediata de los procedimientos.

Por los fundamentos que exponemos a continuación, expedimos el recurso de *Certiorari* y *revocamos* la *Resolución* recurrida.

# I.

El 25 de marzo de 2025 la recurrida, Jannette Díaz Carrasquillo (en adelante, recurrida o Díaz Carrasquillo), presentó una *Demanda* en contra del peticionario, en la cual alegó que fue despedida por el peticionario de manera ilegal y discriminatoria, en violación a la Ley Núm. 44 de 17 de julio de 1985, 1 LPRA sec. 501 *et seq.*, y la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.*[1] En el pliego, la recurrida sostuvo, entre otras cosas, que, mientras desempeñaba su cargo como Directora de Finanzas de CSILO, recibió una notificación de la agencia federal Health Research Service Administration, en la cual le solicitaban la devolución de un dinero que se pagó a CSILO durante la pandemia del COVID-19, ya que este no se utilizó ni se habían presentado los informes correspondientes. Por estos hechos, Díaz Carrasquillo adujo que el licenciado Cesar Rodríguez Román (en adelante, Lcdo. Rodríguez Román), quien era el Director Ejecutivo de CSILO, la acusó de negligencia crasa, y ordenó al Lcdo. Rivera Torres a que redactara una carta para su despido. La recurrida indicó que, al advenir en conocimiento de que había una intención de despedirla, presentó su renuncia. Por lo cual, Díaz Carrasquillo arguyó que estas acciones constituyeron un despido constructivo.

Así las cosas, el 17 de abril de 2025, el peticionario compareció a través de su representación legal, el Lcdo. Rivera Torres, por medio de una *Moción de Desestimación*, en la cual adujo que las alegaciones expuestas en la demanda no reflejaban una causa de acción que justificara la concesión de un remedio.[2]

---

[1] Apéndice, Entrada Núm. 1.
[2] Apéndice, Entrada Núm. 6.

Más adelante, el Foro Primario declaró *No Ha Lugar* a la solicitud,[3] por lo que el peticionario presentó su *Contestación a Demanda*.[4]

Ahora bien, en atención a la controversia que nos ocupa, el 22 de mayo de 2025, la recurrida presentó una *Moción Solicitando Descalificación de Abogado*.[5] En esta, Díaz Carrasquillo alegó que el Lcdo. Rivera Torres, quien fungía como asesor legal de CSILO, formó parte del procedimiento disciplinario interno que se llevó a cabo para evaluar su desempeño laboral, así como que intervino en múltiples ocasiones con ella para brindarle orientación.

En específico, la recurrida adujo que sostuvo conversaciones confidenciales con el Lcdo. Rivera Torres, en las cuales discutió información sensible sobre lo relacionado a la notificación recibida por parte de la agencia federal. Además, sostuvo que el Lcdo. Rivera Torres le recomendó que no renunciara, al igual que le ofreció una mesada ascendente a ciento ochenta mil dólares ($180,000.00) para evitar que esta demandara al peticionario. Igualmente, arguyó que el Lcdo. Rivera Torres le aconsejó que buscara representación legal porque tenía una posible reclamación contra el CSILO. Debido a la participación que tuvo este durante el aludido procedimiento, la recurrida solicitó que se descalificara al Lcdo. Rivera Torres y a su bufete, ya que existía la posibilidad de que este pudiese convertirse en un testigo en el pleito.

Más adelante, el 10 de junio de 2025, el peticionario presentó una *Oposición a "Moción Solicitando Descalificación de Abogado*.[6] En su escrito, CSILO alegó que el Lcdo. Rivera Torres se reunió durante el procedimiento disciplinario interno con la

---

[3] Apéndice, Entrada Núm. 25.
[4] Apéndice, Entrada Núm. 26.
[5] Apéndice, Entrada Núm. 14.
[6] Apéndice, Entrada Núm. 24.

recurrida en calidad de asesor legal de CSILO, y que en todas las reuniones estuvo presente Vilmayra Santiago Rivera (en adelante, Santiago Rivera), quien fungió como la Directora de Recursos Humanos de CSILO. A pesar de que aceptó que le recomendó a la recurrida que no renunciara a su empleo, el Lcdo. Rivera Torres sostuvo que no le aconsejó que presentara una acción legal contra CSILO.

En adición, el peticionario arguyó que Díaz Carrasquillo no demostró que la participación del Lcdo. Rivera Torres le causara un perjuicio específico o desventaja indebida como lo requería la norma jurídica aplicable. Igualmente, alegó que no aplicaba el Canon 22 del Código de Ética Profesional, 4 LPRA Ap. IX, debido a que, si el Lcdo. Rivera Torres tuviese que testificar, su declaración hubiese sido favorable a su CSILO.

Con su oposición, el peticionario anejó tres declaraciones juradas suscritas por el Lcdo. Rivera Torres[7], Santiago Rivera[8], y el Lcdo. Rodríguez Román[9]. En síntesis, estas afirmaron lo alegado por el peticionario en su oposición, con relación a la participación del Lcdo. Rivera Torres durante el proceso disciplinario interno. De la misma manera, estas mencionaron que el Lcdo. Rivera Torres estuvo acompañado por Santiago Rivera en las reuniones que tuvo con la recurrida. En específico, el Lcdo. Rivera Torres negó haberle ofrecido una mesada. Asimismo, el Lcdo. Rodríguez Román sostuvo, en su declaración jurada, que en ningún momento autorizó al Lcdo. Rivera Torres a ofrecerle asesoría legal individual a la recurrida.

Tras varios asuntos procesales, el 8 de julio de 2025, el Tribunal de Primera Instancia notificó la *Resolución* de la cual aquí

---

[7] Apéndice, Entrada Núm. 24, Anejo Núm. 1.
[8] Apéndice, Entrada Núm. 24, Anejo Núm. 2.
[9] Apéndice, Entrada Núm. 24, Anejo Núm. 3.

se recurre.[10] En esta, el Foro Primario concluyó que la posibilidad de que la información pertinente se pudiese obtener de Santiago Rivera no subsanó el hecho de que el Lcdo. Rivera Torres pudiese ser llamado como testigo y que tuviese que declarar a favor de ambas partes en el pleito. Por lo cual, el Foro de Instancia declaró *Con Lugar* la solicitud de descalificación del Lcdo. Rivera Torres.

Inconformes, y tras denegada una previa solicitud de reconsideración, el 16 de julio de 2025, el peticionario compareció ante nos mediante el presente recurso de *Certiorari*. CSILO acompañó su recurso con una *Moción Urgente en Auxilio de Jurisdicción*, respecto a la cual, mediante *Resolución* del 16 de julio de 2025, ordenamos la paralización de los procedimientos en el Tribunal de Primera Instancia.

En su recurso, el peticionario formula los siguientes señalamientos de error:

> **PRIMERO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN LA INTERPRETACIÓN Y APLICACIÓN DEL CANON 22 DE ÉTICA PROFESIONAL AL CONCLUIR QUE REQUIERE LA DESCALIFICACIÓN AUTOMÁTICA CUANDO UN ABOGADO "PUEDE SER LLAMADO" COMO TESTIGO, SIN CONSIDERAR SI DICHO TESTIMONIO SERÍA "EN CONTRA DE SU CLIENTE" COMO EXPRESAMENTE REQUIERE EL CANON.

> **SEGUNDO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ CRASAMENTE DE SU DISCRECIÓN AL NO APLICAR EL ESTÁNDAR ESTABLECIDO EN ADES V. ZALMAN, 115 DPR 514 (1984), IGNORANDO SU PROPIA DETERMINACIÓN DE QUE "LA INFORMACIÓN QUE SE BUSCA DESCUBRIR A TRAVÉS DEL ABOGADO ES SUSCEPTIBLE DE SER OBTENIDA DE OTRAS PERSONAS O MEDIOS MENOS ONEROSOS".

> **TERCERO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ CRASAMENTE DE SU DISCRECIÓN AL ORDENAR LA DESCALIFICACIÓN SIN CONSIDERAR MEDIDAS MENOS ONEROSAS QUE PUDIERAN ASEGURAR LA INTEGRIDAD DEL PROCESO JUDICIAL, VIOLANDO EL PRINCIPIO ESTABLECIDO DE QUE LA DESCALIFICACIÓN ÚNICAMENTE PROCEDERÁ CUANDO SEA ESTRICTAMENTE NECESARIA.

> **CUARTO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCALIFICAR AL LICENCIADO RIVERA TORRES CUANDO LA PARTE PROMOVENTE CARECÍA DE LEGITIMACIÓN ACTIVA AL NO DEMOSTRAR EL PERJUICIO ESPECÍFICO QUE LE CAUSARÍA LA

---

[10] Apéndice, Entrada Núm. 30.

CONTINUACIÓN DE DICHA REPRESENTACIÓN, SEGÚN REQUIERE JOB CONNECTION CENTER V. SUPS. ECONO, 185 DPR 585 (2012), CAUSANDO PREJUICIO SUSTANCIAL AL PETICIONARIO.

**QUINTO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ CRASAMENTE DE SU DISCRECIÓN AL ORDENAR LA DESCALIFICACIÓN DEL LCDO. VÍCTOR RIVERA TORRES SIN CELEBRAR VISTA EVIDENCIARIA, A PESAR DE EXISTIR CONTROVERSIAS DE HECHOS MATERIALES EVIDENCIADAS POR DECLARACIONES JURADAS MUTUAMENTE CONTRADICTORIAS, EN VIOLACIÓN DEL DEBIDO PROCESO DE LEY Y LA DOCTRINA ESTABLECIDA EN OTAÑO CUEVAS V. VÉLEZ SANTIAGO, 141 DPR 820 (1996).

Así las cosas, en la *Resolución* emitida previamente por este Foro, ordenamos a la recurrida a que presentara su posición en cuanto al recurso de epígrafe no más tarde del 29 de julio de 2025. Vencido el término sin que Díaz Carrasquillo compareciera, quedó perfeccionado el recurso, por lo que procedemos a expresarnos.

## II.

## A.

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023); Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 846-847 (2023); Caribbean Orthopedics v. Medshape et al., 207 DPR 994, 1004 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174-175 (2020); IG Builders *et al*. v. BBVAPR, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del Foro Apelativo. Torres González v. Zaragoza Meléndez, *supra,* pág. 847; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). En particular, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, nos faculta a revisar resoluciones u órdenes interlocutorias dictadas por el

Tribunal de Primera Instancia, cuando "esperar a una apelación constituiría un fracaso irremediable a la justicia".

Al evaluar un recurso de *certiorari* nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008). La referida regla dispone lo siguiente:

> El tribunal tomara en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> 4 LPRA Ap. XX-B, R. 40;
> BPPR v. Gómez-López, *supra*, pág. 337.

Como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. BPPR v. SLG Gómez-López, *supra*, pág. 334; VS PR, LLC v. Drift-Wind,

207 DPR 253, 273 (2021). El adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. BPPR v. SLG Gómez-López, *supra*, pág. 335; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 434-435 (2013); Rivera y otros v. Bco. Popular, 152 DPR 140, 155 (2000).

**B.**

La Regla 9.3 de Procedimiento Civil, dispone, en lo pertinente al caso de autos, lo siguiente:

> […] El Tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte, imponer sanciones económicas o de otra naturaleza o descalificar a un abogado o abogada que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as).
>
> 32 LPRA Ap. V, R. 9.3.

Siendo así, "el Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello abone a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos". Torres Alvarado v. Madera Atiles, 202 DPR 495, 504 (2019); Job Connection Center v. Sups. Econo, 185 DPR 585, 596 (2012); Meléndez v. Caribbean Int'l. News, 151 DPR 649, 661 (2000). Las órdenes de descalificación pueden proceder para la prevención de posibles violaciones de los Cánones de Ética Profesional o "para evitar actos disruptivos de los abogados durante el trámite de un pleito". ORIL v. El Farmer, Inc., 204 DPR 229, 241 (2020); Job Connection Center v. Sups. Econo, *supra,* pág. 596. A pesar de ello, los procedimientos de descalificación de abogados no constituyen acciones disciplinarias per se. ORIL v. El Farmer, Inc., *supra*, pág.

241; K-Mart Corp. v. Walgreens of P.R., Inc., 121 DPR 633, 638 (1988).

La descalificación de un abogado no deberá imponerse ligeramente, puesto que, esta afecta aspectos tales como los derechos de las partes y el trámite de los procedimientos. ORIL v. El Farmer Inc., *supra*, pág. 244. Esta únicamente procederá cuando sea estrictamente necesario, pues se considera un remedio drástico que debe ser evitado si existen medidas menos onerosas que puedan asegurar la integridad del proceso judicial y el trato justo de las partes. ORIL v. El Farmer Inc., *supra*, pág. 244; Job Connection Center v. Sups. Econo, supra, pág. 597. Para lograr este propósito, el Tribunal de Primera Instancia "deberá realizar un balance entre el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial". Job Connection Center v. Sups. Econo, supra, pág. 597.

Una descalificación puede ser ordenada por el tribunal *motu proprio* o a solicitud de una parte. ORIL v. El Farmer, Inc., *supra*, pág. 242; Job Connection Center v. Sups. Econo, *supra,* pág. 597. En los casos en los que es el tribunal la declara *motu proprio*, no es necesario que se aporte prueba de que se incurrió en una violación de naturaleza ética, toda vez que, en caso de duda, la apariencia de impropiedad podrá ser utilizada a favor de la descalificación. Job Connection Center v. Sups. Econo, *supra*, pág. 597; Meléndez v. Caribbean Int'l. News, *supra,* pág. 661; Liquilux Gas Corp. v. Berríos, Zaragoza, 138 DPR 850, 864 (1995); In re Carreras Rovira y Suárez Zayas, 115 DPR 778, 792 (1984).

Por otro lado, si es una de las partes involucradas en el pleito la que solicita la descalificación de uno de los representantes

legales, "la mera presentación de una moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión". ORIL v. El Farmer, Inc., *supra*, pág. 242; Job Connection Center v. Sups. Econo, *supra,* pág. 597. En estos casos, el tribunal de instancia deberá analizar los siguientes factores: (1) si la parte que solicita la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible violación ética involucrada; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el "expertise" de los abogados implicados;(4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (5) el propósito detrás de la descalificación. ORIL v. El Farmer, Inc., *supra*, págs. 242-243; Job Connection Center v. Sups. Econo, *supra,* págs. 597-598; Flecha v. Lebrón, 166 DPR 330, 366-367 (2005); Otaño v. Vélez, 141 DPR 820, 828 (1996) (*Per Curiam*); Liquilux Gas Corp. v. Berríos, Zaragoza, *supra*, págs. 864-865.

Asimismo, al analizar si procede declarar *Ha Lugar* una moción de descalificación, el tribunal debe tomar en consideración si la continuación de la representación legal le causaría un perjuicio o desventaja indebida en el caso a quien la solicita. Torres Alvarado v. Madera Atiles, *supra,* pág. 504; Job Connection Center v. Sups. Econo, *supra*, pág. 598. La anterior determinación debe complementarse con el interés de brindarle la oportunidad al representante legal cuya descalificación se solicita, para que se exprese en cuanto a sus méritos, y presente prueba en su defensa. Torres Alvarado v. Madera Atiles, *supra,* pág. 504; Job Connection Center v. Sups. Econo, *supra,* pág. 598. De este modo, se cumple con las exigencias del debido proceso de ley. Job

Connection Center v. Sups. Econo, *supra*, pág. 598; Meléndez v. Caribbean Int'l. News, *supra*, pág. 670.

Igualmente, el Tribunal podrá celebrar una vista, en la cual le permita al abogado en controversia defender su postura, así como que demuestre la inexistencia del conflicto ético alegado. Flecha v. Lebrón, *supra*, págs. 367-368. A los fines de resolver la moción de descalificación, el tribunal debe tomar en cuenta los factores antes expuestos, además de considerar el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente. Flecha v. Lebrón, *supra,* pág. 367; Otaño v. Vélez, *supra,* pág. 828.

Por su parte, el Tribunal Supremo razonó que los dictámenes en los cuales se ordena la descalificación de un abogado pueden tener el efecto potencial de que sean afectados los derechos de las partes involucradas en el pleito y el trámite de los procedimientos. Job Connection Center v. Sups. Econo, *supra*, pág. 599. Por lo cual, estas determinaciones son revisables de conformidad con la Regla 52.1 de Procedimiento Civil, *supra*, toda vez que "esperar a una apelación constituiría un fracaso irremediable a la justicia". Job Connection Center v. Sups. Econo, *supra*, pág. 601. Por tanto, nuestro Máximo Foro ha sido enfático en que los tribunales apelativos estamos llamados a revisar la decisión sobre la descalificación, siempre y cuando se demuestre que el foro de instancia abusó crasamente de su discreción, actuó con perjuicio o parcialidad, se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esta etapa evitaría un perjuicio sustancial. ORIL v. El Farmer Inc., *supra*, pág. 244.

**Ahora bien, en el contexto de la controversia que nos ocupa, es importante destacar que el Código de Ética Profesional en Puerto Rico establece las pautas mínimas que deben guiar la conducta de los abogados en el ejercicio de su profesión, asegurando que se mantengan los estándares éticos necesarios para una práctica responsable y justa.** In re Nogueras Cartagena, 150 DPR 667, 674 (2000). En específico, el Canon 22 del referido Código, 4 LPRA Ap. IX C. 22, establece lo siguiente:

> Excepto cuando sea esencial para los fines de la justicia, el abogado debe evitar testificar en beneficio o en apoyo de su cliente. Cuando un abogado es testigo de su cliente, excepto en materias meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes, debe dejar la dirección del caso a otro abogado.
>
> Igualmente, un abogado debe renunciar la representación de su cliente cuando se entera de que el propio abogado, un socio suyo o un abogado de su firma puede ser llamado a declarar en contra de su cliente.

De esta forma, el Canon 22, *supra*, reconoce la importancia de que el abogado no participe como parte ni se reincorpore en el elemento probatorio, con el propósito de evitar, en la medida de lo que sea posible, la confusión entre la función del profesional legal y la de un testigo. Ades v. Zalman, 115 DPR 514, 520 (1984). Al momento de evaluar la descalificación, el tribunal debe determinar si la información que se pretende obtener a través del abogado puede ser obtenida de otras fuentes accesibles, menos onerosas y complejas. Íd., pág. 524. En caso de existir tales alternativas, el tribunal debe optar por ese medio. Íd.

De este modo, esbozada la normativa jurídica que enmarca la controversia de epígrafe procedemos a resolver.

**III.**

Como foro revisor, nos corresponde determinar si el Tribunal de Primera Instancia actuó correctamente al conceder la descalificación de la representación legal de CSILO sin celebrar una vista evidenciaria. En específico, el peticionario señala la comisión de cinco (5) errores que, al estar relacionados entre sí, procedemos a discutirlos en conjunto.

En su *primer señalamiento de error*, el peticionario alegó que el Foro Primario erró al concluir que bajo el Canon 22 del Código de Ética Profesional, *supra*, procedía descalificar al Lcdo. Rivera Torres. Asimismo, en su *segundo señalamiento de error*, CSILO alegó que el Foro de Instancia incidió al no aplicar el estándar de Ades v. Zalman, *supra*, ya que había un medio menos oneroso por el cual se podía obtener la información que se buscaba descubrir con el testimonio del Lcdo. Rivera Torres. Igualmente, en su *tercer señalamiento de error*, el peticionario adujo que esta acción del Foro Primario violó el principio que establece que la descalificación de la representación legal debe ser el último remedio. En su *cuarto señalamiento de error*, CSILO arguyó que la recurrida carecía de legitimación activa para solicitar la descalificación, ya que no demostró el perjuicio que le causaría la participación del Lcdo. Rivera Torres en el pleito. Por último, en su *quinto señalamiento de error*, el peticionario alegó que el Foro Primario erró al no celebrar una vista evidenciaria antes de proceder con la descalificación.

Conforme a la norma anteriormente esbozada, a pesar de que el Canon 22 de Código de Ética Profesional, *supra,* dispone que el abogado debe evitar testificar a favor de su cliente, el Tribunal Supremo ha expresado que, ante una solicitud de descalificación, el Foro Primario debe hacer una determinación sobre si existe otra fuente accesible, menos onerosa y compleja,

de la cual se pueda obtener la información que se pretende adquirir del abogado en controversia. Al tratarse de un remedio drástico que no debe ser impuesto ligeramente, nuestro ordenamiento jurídico exhorta a que, de haber otra alternativa para obtener esta información, el tribunal evite descalificar a la representación legal de las partes. Por tanto, nuestro Máximo Foro ha establecido que la descalificación solo procederá cuando sea estrictamente necesaria para salvaguardar la integridad del proceso judicial y el trato justo entre las partes.

Asimismo, se ha establecido que, ante una solicitud de descalificación, el Foro Primario debe tomar en consideración una variedad de factores. Entre estos, debe analizar el impacto que tendría en las partes, tanto la ausencia de dicho abogado, como su permanencia en el pleito. Igualmente, el tribunal debe tomar en cuenta si la parte que solicita la descalificación posee legitimación activa para hacer la referida petición. Para ello, dicha parte tendrá que demostrar el perjuicio que le causaría el hecho de que el abogado en cuestión esté presente. Es por esto que una petición de descalificación no debe ser concedida de forma automática, pues debe ser producto de un análisis meticuloso del tribunal.

Debido a la importancia de evaluar los factores pertinentes para decidir si corresponde la descalificación de un abogado, como corolario del derecho a un debido proceso de ley, el Foro Primario debe darle la oportunidad a las partes y al abogado cuya descalificación se solicita para defender su posición y demostrar la ausencia del conflicto ético alegado. De la misma forma, ante la presencia de una controversia de hechos entre las partes respecto a las circunstancias que motivan la descalificación, lo que

procede es que el Foro Primario celebre una vista, en la cual ambas partes tengan la oportunidad de ser oídas.

En el caso ante nos, el peticionario alegó que, de tener que testificar el Lcdo. Rivera Torres, su declaración sería favorable para su cliente. No obstante, adujo que Santiago Rivera estuvo presente en todas las interacciones que tuvo con la recurrida, por lo que existe otra fuente de información, menos onerosa y compleja, que el Foro Primario debió considerar para evitar imponer la descalificación. Igualmente, arguyó que había controversia de hechos y que la recurrida no demostró el perjuicio que experimentaría si no se descalificaba al referido abogado.

Tras examinar el caso ante nos, justipreciamos que el Foro Primario erró al descalificar al Lcdo. Rivera Torres sin celebrar una vista. A pesar de que el Foro *a quo* permitió que el peticionario se opusiera a la solicitud de descalificación, surge del expediente que existe una controversia de hechos sobre la participación que tuvo el Lcdo. Rivera Torres en el procedimiento disciplinario que se llevó a cabo en CSILO. Por un lado, la recurrida alega que obtuvo asesoría legal individual y confidencial por parte del Lcdo. Rivera Torres y que su conducta resultó en el nacimiento de una relación abogado-cliente. Por otro lado, el peticionario arguyó que el abogado actuó dentro de sus funciones como asesor legal de la empresa, así como que estuvo acompañado por la Directora de Recursos Humanos en las reuniones con Díaz Carrasquillo. En adición, el peticionario negó los hechos alegados por la recurrida con respecto a la naturaleza de las interacciones que hubo entre ambos en el transcurso del procedimiento disciplinario.

De esta forma, surge del expediente que existe una controversia de hechos que amerita la celebración de una vista, en la cual las partes puedan defender su posición. Sin embargo,

inexplicablemente, el Foro Primario resolvió la petición de descalificación sin celebrar la misma. Al ser un remedio drástico que, mientras las circunstancias lo permitan, debe evitarse, es nuestro criterio que el Foro recurrido debió darle la oportunidad al peticionario y al Lcdo. Rivera Torres de defender su posición, así como que debió exigirle a la recurrida que demostrara el perjuicio que le causaría la permanencia de dicho abogado. Para ello, el Foro Primario debió haber celebrado una vista, donde las partes pudiesen presentar la prueba pertinente para la resolución de la controversia y que el Foro *a quo* pudiese analizar con cautela los factores que han sido reconocidos en nuestro ordenamiento jurídico.

Por lo tanto, consideramos que el Tribunal de Primera Instancia incurrió en los errores señalados, ya que, ante la existencia de una controversia entre las partes, como la que se presenta en este caso, no era procedente resolver la cuestión sin haber requerido un desfile de prueba por parte de estas sobre los puntos en disputa. Es por esto que revocamos el dictamen recurrido y devolvemos el caso para que se celebre la referida vista y se dilucide si se puede prescindir de la descalificación del Lcdo. Rivera Torres.

**IV.**

Por los fundamentos anteriormente expuestos, *expedimos* el presente recurso y *revocamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones